**BLUFFS DEVELOPMENT COMPANY, INC., Appellant,**

v.

**THE BOARD OF ADJUSTMENT OF POTTAWATTAMIE COUNTY, IOWA, Appellee.**

**No. 91–593.**

Supreme Court of Iowa.

April 21, 1993.

Rehearing Denied May 21, 1993.

Richard Crowl, County Atty., for applicant.

Bruce D. Fleming of Root, Fleming & Tinley, Council Bluffs, for resister.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

LAVORATO, Justice.

This zoning case comes to us on further review from the court of appeals. The fighting issue is whether certain members of a county zoning board of adjustment should have disqualified themselves from voting on an application for a conditional use permit for construction of a landfill. The applicant for the permit asserts these board members should have disqualified themselves because of alleged conflicts of interest and prejudice.

The district court found against the applicant on the conflict of interest and prejudice issue following the applicant's petition for a writ of certiorari. The applicant appealed, and we transferred the case to the court of appeals which reversed. We now vacate the court of appeals' decision and affirm the judgment of the district court.

In July 1989 Bluffs Development Company applied to the Pottawattamie County Board of Adjustment for a conditional use permit. Bluffs wanted to build a recycling plant and landfill on eighty acres of land located about four miles west of Treynor and about five and one-half miles east of Council Bluffs.

The board referred the application to the Pottawattamie County Planning and Zoning Commission for review and recommendation. The commission held four hearings in the fall of 1989 and ultimately recommended denial of Bluffs' application under a local zoning ordinance. Denial was premised on several of the eight factors that must be considered under the ordinance in determining whether to grant or deny an application.

After receiving this recommendation from the commission, the board held its own hearings in late 1989 and early 1990. Before the first hearing, the Pottawattamie county attorney received a letter from Bluffs' attorney. The letter alleged conflicts of interest and prejudice on the part of several board members. These allegations were repeated before the start of the first hearing before the board. The board members involved denied they had any conflicts of interest or prejudice and continued to sit as board members throughout the hearings.

In early March 1990 the board held its final hearing on Bluffs' application and voted unanimously to deny it. In denying the application, the board adopted the findings of the commission and made additional findings under the eight factors contained in the ordinance.

Bluffs then petitioned the district court for a writ of certiorari. The petition alleged, among other things, that the board had acted illegally because

> various members of [the] board ... who participated in the public hearings and in the decision reached by [the] board had

serious personal and pecuniary conflicting interests, and had expressed an opinion prior to the hearings; and had such biases and prejudices such as to disqualify them from participating in said hearings and the decision.

The petition asked the court to grant Bluffs a conditional use permit for the operation of a recycling plant and landfill on the premises. The district court affirmed the board's action, concluding that there was "insufficient evidence to show any conflict of interest of a pecuniary or personal nature, or of any member being predisposed in his decision making."

Following the district court's denial of Bluffs' motion for rehearing, Bluffs appealed. We transferred the case to the court of appeals which determined that Bluffs had made a sufficient showing on the conflict of interest and prejudice issue. Based on this determination, the court of appeals concluded that the board had acted illegally, reversed the district court's judgment, and remanded for a new hearing on Bluffs' application for a conditional use permit.

I. Iowa Code chapter 358A governs challenges to county board of adjustment decisions. Bluffs filed its certiorari action in district court under Iowa Code section 358A.18 (1989). This provision allows

[a]ny person or persons, jointly or severally, aggrieved by any decision of the board of adjustment ... [to] present to a court of record a petition ... setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality.

Iowa Code section 358A.21 provides that proceedings before the district court "shall be tried de novo" and the court "may reverse or affirm, wholly or partly, or may modify the decision brought up for review." Section 358A.21 tracks verbatim the language of Iowa Code section 414.18 which pertains to municipal zoning. Our cases give the same interpretation to both sections. *See, e.g., Trailer City, Inc. v. Board of Adjustment*, 218 N.W.2d 645, 647–48 (Iowa 1974). This court has said what "de novo" means and what our scope of review is under both sections:

*The term "de novo" as used in either section [414.18 and 358A.21] does not bear its equitable connotation. It authorizes the taking of additional testimony, but only for the submission and consideration of those questions of illegality raised by the statutory petition for writ of certiorari.* Upon the hearing to determine such questions the trial court, as both sections 414.18 and 358A.21 provide, "... may reverse or affirm, wholly or partly, or may modify the decision brought up for review." *The action of the trial court has the effect of a jury verdict and is appealable to us on assigned errors only.*

*Id.*

■ Because our review is on assigned error—that is, at law—the findings of the district court are binding on us if those findings are supported by substantial evidence. *Obrecht v. Cerro Gordo County*, 494 N.W.2d 701, 703 (Iowa 1993). Evidence is substantial if a reasonable mind could accept it as adequate to reach the same findings. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 913 (Iowa 1987).

Here the district court found there was insufficient evidence on the conflict of interest and prejudice issue. Bluffs has the unenviable task here of proving this issue as a matter of law. This means Bluffs must show that the evidence of conflict of interest and prejudice is so strong that reasonable minds could reach but one conclusion.

II. Unlike many jurisdictions, there is no Iowa statutory mandate that board of zoning adjustment members be disinterested and free from prejudice when voting on applications like the one here. However, "boards of zoning adjustment and review generally are deemed to be quasi-judicial bodies having quasi-judicial powers, functions, and duties, essentially fact-finding and discretionary in character." 8A Eugene McQuillin, *Municipal Corporations* § 25–230, at 191 (3d ed. 1986). In passing upon the issuance of a permit similar to the one here, such boards act in a quasi-judicial capacity. *Anderson v. Jester*, 206 Iowa 452, 459, 221 N.W. 354, 358 (1928). Under

the common law, officials exercising quasi-judicial powers

> [are] disqualified or incompetent to sit in a proceeding in which [they have] pre-judged the case, or in which [they have] a personal or pecuniary interest, where [they are] related to an interested person within the degree prohibited by statute, or where [they are] biased, prejudiced, or labor[ ] under a personal ill-will toward a party.

1 Am.Jur.2d *Administrative Law* § 64, at 860–61 (1962).

The reasoning underlying the common law rule is simple: "[T]he public is entitled to have their representatives perform their duties free from any personal or pecuniary interest that might affect their judgment." *Netluch v. Mayor & Council of West Paterson,* 130 N.J.Super. 104, 107–08, 325 A.2d 517, 519 (1974). Deviation from the rule can invalidate the governmental action taken. The reason for such a drastic result is again simple: "to prevent the possibility of an official in a position of self-interest to deviate from his sworn public trust." *Id.* at 108, 325 A.2d at 519.

There is no mathematical way to quantify the interest necessary to taint the process and disqualify quasi-judicial officers from acting on matters before them. *Id.* at 107–09, 325 A.2d at 519. However, courts have developed standards to describe what that interest includes.

The standards are these. The interest must be different from that which the quasi-judicial officer holds in common with members of the public. *Id.* at 109, 325 A.2d at 520. For example, a personal interest in the welfare of the community is not a disqualifying interest. *Batchelor v. Mayor of Avon-by-the-Sea,* 78 N.J.L. 503, 506–08, 74 A. 561, 562 (1909). In addition, such interest must be "direct, definite, capable of demonstration, not remote, uncertain, contingent, unsubstantial, or merely speculative or theoretical." 1 Am.Jur.2d *Administrative Law* § 64, at 861 (1962).

Practicality is the driving force behind these standards. As one court wisely noted,

> [l]ocal governments ... would be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of a zoning official. Such a policy would not only discourage but might even prevent capable men and women from serving as members of the various zoning authorities.

*Cioffoletti v. Planning & Zoning Comm'n,* 209 Conn. 544, 555, 552 A.2d 796, 801 (1989) (citation omitted).

Practicality has convinced one court that due process standards for disqualification of quasi-judicial officers do not rise to the level of those prescribed for judicial disqualification. *Petrowski v. Norwich Free Academy,* 199 Conn. 231, 506 A.2d 139 (1986). On this point the court in *Petrowski* noted that

> [s]uch a rarefied atmosphere of impartiality cannot practically be achieved where the persons acting as administrative adjudicators, whose decisions are normally subject to judicial review, often have other employment or associations in the community they serve. It would be difficult to find competent people willing to serve, commonly without recompense, upon the numerous boards and commissions in this state if any connection with such agencies, however remotely related to the matters they are called upon to decide, were deemed to disqualify them. Neither the federal courts nor this court require a standard so difficult to implement as a prerequisite of due process of law for administrative adjudication.

*Id.* at 238, 506 A.2d at 143.

III. With these principles in mind, we turn to Bluffs' claim that board members L. Donald Hoffman, M.J. (Mick) Ryan, Jr., Duane Benson, and Harold Tripp had conflicts of interest and prejudice that disqualified them from acting on its application.

Bluffs' allegations of conflict of interest and prejudice concerning Hoffman, Ryan, and Benson were detailed in the letter to the Pottawattamie county attorney on October 18, 1989. As to Hoffman, the allegation was that his employment by Pottawat-

tamie Mutual Insurance Company precluded his ability to exercise independent judgment. This was because (1) a member of the insurance company's board of directors, Bill Orr, Sr., who owned land adjacent to the proposed landfill, was a vocal opponent of Bluffs' landfill proposal, and (2) Treynor area insureds of the insurance company were also opposed to the proposal.

As to Ryan, a similar argument was mounted. Ryan was an agent for Farm Bureau Insurance Company. Because Farm Bureau wrote policies for several residents in the Treynor area and these customers opposed Bluffs' proposed landfill, Bluffs claimed Ryan would be unable to vote in favor of it. Bluffs later buttressed this argument with the fact that Ryan had serviced a liability insurance policy on Orr's farm.

The October 18 letter also charged that board member Duane Benson was prejudiced against the proposed landfill. This claim was based on an alleged statement by Benson before any presentation by Bluffs to the board. According to Bluffs, Benson said he would move to deny Bluffs' application.

These allegations were addressed at the October 25, 1989, public hearing. During this discussion, Bluffs alleged that another board member, Harold Tripp, had (1) a son working for the city of Treynor, (2) relatives in the Treynor area, and (3) accounts at the Treynor bank. Because Tripp's son, the relatives, and a bank officer all opposed the landfill, Bluffs complained that Tripp, too, had a conflict of interest.

At the October 25 hearing, all board members responded to Bluffs' allegations. Hoffman's statement consisted of the following. He knew Bill Orr, Sr., but had not talked to him about Orr's opposition to the landfill. Hoffman's duties for the insurance company consisted mainly of handling the company's investments; he did not sell insurance. The company board, which consisted of nine members including Orr, could fire him at any time but it would take five votes to do so. His ability to be fair and impartial would not be affected by Orr's feelings. (At the March 7, 1990, hearing,

before the final vote, Hoffman revealed that Orr was stepping down from his position on the company's board on the following day.)

Ryan's statements can be summarized as follows. He did write and service insurance policies for Farm Bureau in Council Bluffs and could work anywhere in western Pottawattamie county. He had very few insurance policies in Treynor (the city closest to the landfill), but one of those was a liability policy on Orr's farm. Neither of these facts would affect his ability to be fair and impartial in this matter. No one had threatened to drop their policies if he voted in favor of the application. October 31, 1989, would be his last day of employment with Farm Bureau.

Benson denied making any negative comments about the application before the hearings began. He also stated that he had not prejudged the matter nor had he ever stated that he had.

Tripp stated that his son's employment with the city of Treynor would make no difference on his vote.

All four were asked if they had any property or financial interest that would either be increased or decreased based on how they voted. All said they did not. Bluffs was given an opportunity to ask questions of the four. It declined. It presented no sworn affidavits and no other evidence of any kind in support of its claims.

The district court allowed Bluffs to take depositions of all the zoning board members during the certiorari proceedings. This, of course, was after the vote to deny Bluffs' application. In his deposition, Hoffman stated that there was no pressure put on him as to his vote in the matter. In his deposition, Tripp indicated his son was a maintenance worker for the city of Treynor. Tripp also said he had not discussed the application with anyone outside of the board meetings. Additionally, Tripp said that no one had pressured him to vote one way or the other on the application and that he had no preconceived opinion. Except for this additional information, the depositions revealed nothing more than what

the four board members had already stated at the hearings before the board.

Hoffman, Ryan, and Tripp shared a common interest; each had a relationship with opponents of the landfill proposal. Those relationships included business dealings and family. Such relationships—standing alone—are nothing more than a remote, and therefore nondisqualifying, interest. *See, e.g. Bracey v. City of Long Branch,* 73 N.J.Super. 91, 97–99, 179 A.2d 63, 67 (1962) (family relationship); *Van Itallie v. Borough of Franklin Lakes,* 28 N.J. 258, 267–69, 146 A.2d 111, 116 (1958) (family relationship); *Parker v. Town of Gardiner Planning Bd.,* 184 A.D.2d 937, 937–40, 585 N.Y.S.2d 571, 572–73 (1992) (business dealings); *Ahearn v. Zoning Bd. of Appeals,* 158 A.D.2d 801, 801–02, 551 N.Y.S.2d 392, 394 (1990) (business dealings); *Moody v. City of University Park,* 278 S.W.2d 912, 918–19 (Tex.Civ.App.1955) (business dealings and family relationships).

Had the opponents leveraged these relationships into votes against Bluffs' application, our conclusion may have been otherwise. There is no evidence—let alone evidence as a matter of law—that this was done.

Our conclusion might also have been different if a board member had a direct interest that would have been substantially enhanced or depreciated depending on the vote. *See, e.g., Stahl v. Board of Supervisors,* 187 Iowa 1342, 1350, 175 N.W. 772, 775 (1920) (board member cast deciding vote for establishment of drainage district directly benefiting him financially by $10,000); *Totty v. Grantham Planning Bd.,* 120 N.H. 388, 389–90, 415 A.2d 687, 688 (1980) (board member ownership of land abutting proposed subdivision found to be disqualifying interest). There likewise was no evidence that this was the case.

What evidence there was simply indicated that the interests these board members had, they held in common with the members of the public. Our careful review of the questions and comments from the board members at the various hearings indicated they were only interested in one thing: how the landfill would affect community life within the parameters of the ordinance standards they were bound to follow in approving or denying the application.

■ Benson's situation is different. Bluffs claimed he prejudged the matter. Bluffs' evidence as to this claim is nothing more than a bald assertion. Bald assertions are not evidence, much less evidence as a matter of law.

For these reasons we do not disturb the district court's ruling which succinctly summed up the evidence on this issue in these findings:

In reviewing the transcript of hearing and the depositions taken by [Bluffs] of these board members, the court finds that there is insufficient evidence to find any conflict of interest. The alleged pecuniary interest that these board members had is tenuous at best. There is no evidence that any of these members were significantly influenced by any pecuniary interest or relationship with other persons opposed to this project. Pottawattamie County, while a sizable community, will inevitably have members of administrative committees which have some social relationship with most applicants or opponents to administrative actions. Such a relationship does not rise to automatic disqualification.

IV. In its appeal, Bluffs raised two other issues. One concerned the board's refusal to reopen the hearings for rebuttal by Bluffs. The other concerned whether there was substantial evidence to support the board's denial of Bluffs' application. The district court decided both issues adversely to Bluffs. The court of appeals affirmed on the rebuttal issue and did not reach the substantial evidence issue.

Bluffs has not sought further review on either issue. Nevertheless we have reviewed the record with these issues in mind. Our review convinces us that the district court was correct on both.

We therefore vacate the court of appeals decision and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**