**MARTIN MARIETTA MATERIALS, INC., Stanley Pearson and Marjorie Pearson, Appellants,**

v.

**DALLAS COUNTY, Iowa and Board of Adjustment of Dallas County, Iowa, Appellees,**

and

**Knapp–Pulver, L.C., and W & G McKinney Farms, L.P., Intervenors–Appellees.**

No. 02–1855.

Supreme Court of Iowa.

Feb. 25, 2004.

Bernard L. Spaeth, Jr. and Theodore C. Simms, II of Whitfield & Eddy, P.L.C., Des Moines, for appellants.

James E. Brick and James E. Nervig of Gentry, Bowers, Swartz, Stoltze, Schuling, Levis, P.C., Des Moines, for appellees.

Gary M. Myers and Heather L. Palmer of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for intervenor-appellee Knapp–Pulver, L.C.

James V. McKinney of McKinney Law Offices, P.C., Waukee, for intervenor-appellee W & G McKinney Farms, L.P.

LAVORATO, Chief Justice.

In this certiorari proceeding, the plaintiffs appeal a district court ruling affirming a board of adjustment decision denying their application for a conditional use permit. The permit would have allowed the operation of a sand and gravel excavation business in Dallas County, Iowa. Because we conclude the district court abused its discretion in refusing to allow discovery depositions and in excluding testimony from two witnesses, we reverse and remand.

## I. Background Facts.

On March 16, 2001, Martin Marietta Materials, Inc. and Stanley and Marjorie

Pearson filed an application for a conditional use permit with Dallas County. Martin Marietta had negotiated an option to purchase from the Pearsons the property described in the application. Martin Marietta sought permission to build and operate a sand and gravel business on the property, which was zoned A 2 (agricultural/conservation/floodplain district).

The Dallas County ordinance allows mining of sand and gravel on property zoned A–2 upon issuance of a conditional use permit. *Dallas County, Iowa, Ordinances* §§ 45.10(1), 45.09(3)(B)(c) (2001). Before the Board of Adjustment may grant such a permit, it must find all of the following:

(a) Surrounding Area. The value and qualities of the area (or neighborhood) surrounding the conditional use are not substantially injured, and the establishment of a conditional use will not impede the normal and orderly development and improvement of surrounding property for uses predominant in the area.

(b) Infrastructure. That adequate utilities, access roads, drainage, and other necessary facilities have been or are being provided.

(c) Intent of Ordinance. That the conditional use is consistent with the intent and purpose of this Ordinance to promote public health, safety, and general welfare.

(d) Nuisance Factors. That adequate measures have been or will be taken to prevent or control offensive odor, fumes, dust, noise, and vibration, so that none of these will constitute a nuisance and to control lighted signs and other lights in such a manner that no disturbance to neighboring properties will result.

(e) Comprehensive Plan. That the conditional use is not inconsistent with the comprehensive plan and land use policies of the County.

*Id.* § 45.09(3)(C)(a)-(e).

Initially, the Dallas County Planning and Zoning Commission considered the application and following public hearings approved it on May 29, 2001.

The ordinance originally provided that applications for conditional use permits be first submitted to the Planning and Zoning Commission and then be approved by the Board of Supervisors. Hallett Construction had earlier requested a permit to remove gravel on land east of and adjacent to the Pearsons' property. The Planning and Zoning Commission approved Hallett's application on October 17, 2000, following which the Board of Supervisors approved the application on December 21, 2000. In addition to the Board of Supervisors' approval, Hallett obtained Board of Adjustment approval on March 8, 2001.

Iowa Code sections 335.10 and 335.15(2) (2001) require that a county board of adjustment rather than the county board of supervisors approve all conditional uses or special uses. Because of these statutory provisions, Knapp–Pulver, L.C. and W & G McKinney Farms, L.P.—intervenors in the present action—successfully challenged in the district court the Dallas County ordinance provision that was contrary to these statutes. On July 24, 2001, the district court held that conditional uses or special uses be approved by a county board of adjustment rather than the county board of supervisors. This holding is in accord with our case law. *See Holland v. City Council,* 662 N.W.2d 681, 683 (Iowa 2003).

On September 19, 2001, the Board of Supervisors amended the zoning ordinance to require that conditional uses be approved by the Board of Adjustment in accordance with sections 335.10 and 335.15(2). The amendment provided that applications that had been reviewed by the

Planning and Zoning Commission and had received a positive recommendation from that body could be submitted directly to the Board of Adjustment for approval.

Thereafter on September 20, 2001, Martin Marietta's attorney at the time, Randy V. Hefner, requested in writing that the Board of Adjustment consider Martin Marietta's application which had been on file since March 16, 2001. In the same letter, Hefner, who was also representing Hallett, requested that Hallett's application also be considered. As mentioned, Hallett had already obtained approval from the Board of Adjustment on March 8, 2001; however, this was before the Board of Supervisors had amended the ordinance. (Apparently, Hallett and the Board of Supervisors were not sure whether this prior approval from the Board of Adjustment was valid. Hallett had discontinued operations at the request of the Board of Supervisors pending a hearing before the Board of Adjustment.)

In the September 20 letter, Hefner wrote:

There are, however, two applications which have been reviewed by [Planning and Zoning], but not voted upon by the Supervisors. These are, of course, the Nextel and Martin Marietta applications. Since Hallett has been asked by Dallas County to not operate pending a hearing before the Board of Adjustment, it would also logically fall into this category.

Thus, we submit that these three applications should be processed by the Board of Adjustment first and as soon as possible.... We do understand that the Martin Marietta application is likely to be the most controversial application and will likely require the longest hearing, and thus we would understand scheduling that application as the last of these three to be heard.

On October 9 the Board of Supervisors passed a resolution "to proceed with a mining study for a compatible or suitable land use in designated areas." The study was deemed necessary to "making informed and appropriate decisions for permitting mining operations in Dallas County."

On October 16 the Board of Supervisors passed a resolution seeking review by the Planning and Zoning Commission of a proposed ordinance regarding applications for mining operations in Dallas County. Within that proposed ordinance was a prohibition from accepting, processing, or setting for hearing "applications for conditional use permits for the mining of sand, gravel or limestone within Dallas County filed after October 16, 2001" for six months or until the completion of the mining study, whichever was earlier.

On October 17 the Board of Adjustment held a hearing on the Hallett application and approved it in substantially the same form that the Board of Supervisors had approved it on December 20, 2000. McKinney Farms challenged the Board of Adjustment's decision by writ of certiorari to the district court. The only issue raised was whether the issuance of the conditional use permit by the Board of Adjustment complied with the Dallas County Comprehensive Plan. The district court denied McKinney Farms' request for relief. Thereafter McKinney Farms appealed and we affirmed. *See W & G McKinney Farms, L.P. v. Dallas County Bd. of Adjustment*, 674 N.W.2d 99 (Iowa 2004).

On October 23 the Board of Supervisors passed a resolution in which it noted that the Board of Adjustment was to hear the Martin Marietta application on the following day. The resolution also noted that the Board of Adjustment's approval of the Hallett application on October 17 "im-

pact[ed]" the Martin Marietta application. The resolution further noted that the Board of Supervisors had approved Hallett's application but not Martin Marietta's and that it did not "intend to convey approval of the [Martin Marietta] application by its action on the Hallett application." Finally, the resolution requested the Board of Adjustment

> not [to] approve or deny the [Martin Marietta] application for Conditional Use Permit based on any action previously taken by the Board of Supervisors and that no permit be issued to any applicant unless and until the Board of Adjustment is satisfied that the application meets all applicable requirements of Chapter 45 of the Dallas County Code of Ordinances.

The following day—October 24—the Board of Adjustment conducted a public hearing on Martin Marietta's application. The Board heard from individuals who opposed the application as well as from those who favored it. The Board denied the application by a vote of four to one.

## II. Proceedings.

On November 26 Martin Marietta and the Pearsons (hereinafter collectively Martin Marietta) filed their petition for writ of certiorari, declaratory judgment, mandamus, and judicial review against Dallas County and the Board of Adjustment (hereinafter County). On February 11, 2002, the district court ordered that a writ of certiorari should issue and be served upon the Board of Adjustment. On March 11 the Board of Adjustment filed a return to the writ.

On April 11 the district court granted motions to intervene filed by Knapp–Pulver and McKinney Farms, property owners near the property in question. Later, the district court sustained Martin Marietta's challenge that the Board of Adjustment's decision did not meet the "written findings of fact" requirement as set out in *Citizens Against the Lewis & Clark Landfill v. Pottawattamie County Board of Adjustment*, 277 N.W.2d 921 (Iowa 1979). The court remanded the case to the Board of Adjustment to prepare written findings of fact in compliance with *Lewis & Clark.*

The district court's ruling prompted Martin Marietta to file a second lawsuit on May 31. The purpose of the lawsuit was to preserve Martin Marietta's right to contest the denial of its request for conditional use permit in the event the district court's remand to the Board of Adjustment constituted a general rather than limited remand. Later, at Martin Marietta's request, the district court consolidated this second lawsuit with the certiorari action.

On April 17 the district court granted the County's motion for protective order. The motion was filed in response to Martin Marietta's request to depose "various members of the [Dallas] County staff, the Board of Supervisors, the Board of Adjustment," and also, apparently, any lawyers involved in representing Dallas County, the Board of Supervisors, and the Board of Adjustment.

On May 2 the Board of Adjustment met and adopted findings of fact in support of its October 24, 2001 decision denying Martin Marietta's conditional use permit application. On May 13 the Board of Adjustment filed a supplemental return to the writ of certiorari containing the Board of Adjustment's findings of fact.

On August 5 the district court heard the consolidated action in a bench trial. By then, Martin Marietta had dismissed its petition for judicial review. The court noted that Iowa Code section 335.19 provides that a certiorari action is the vehicle for a review of a board of adjustment decision. The court also noted that the briefs of the

parties appeared to treat the proceedings as a certiorari action, and for that reason the court decided it was appropriate to proceed on that basis.

Shortly before hearing the matter, the district court sustained a motion in limine concerning the testimony of attorney Hefner. During trial, Martin Marietta made an offer of proof regarding Hefner and another witness, Neil Grant. The district court sustained objections to their testimony.

Following trial, the district court issued findings of fact, conclusions of law, and order in which it affirmed the Board of Adjustment decision denying Martin Marietta's application for a conditional use permit. Martin Marietta appealed.

We set out additional facts as they relate to the issues we discuss.

### III. Issues.

Martin Marietta raises five issues on appeal, two of which are dispositive. We restrict our discussion to these two issues, which we note are related. The first issue is whether the district court abused its discretion in granting the County its protective order prohibiting discovery depositions. The second issue is whether the district court abused its discretion in refusing to admit the testimony of Neil Grant and Randy V. Hefner in the certiorari action.

### IV. Statutory Framework.

■ Before proceeding to the issues, we think it would aid our analysis to discuss the statutory framework within which the courts must operate when reviewing board of adjustment decisions.

Except when modified by statute or constitutional principle, certiorari provides limited review of factfindings of an inferior tribunal. In ordinary certiorari actions, the findings of fact of the inferior tribunal may not be upset if they are supported by substantial evidence....

*Weldon v. Zoning Bd.,* 250 N.W.2d 396, 400 (Iowa 1977). Iowa Code chapter 335, which governs challenges to county board of adjustment decisions, modifies the general rule in zoning cases.

Martin Marietta filed its certiorari action in district court under Iowa Code section 335.18. This provision allows

[a]ny person or persons, jointly or severally, aggrieved by any decision of the board of adjustment ... [to] present to a court of record a petition ... setting forth that such decision is illegal, in whole or in part, specifiying the grounds of the illegality.

Iowa Code § 335.18.

Once such petition is presented, "the court may allow a writ of certiorari directed to the board of adjustment to review such decision of the board of adjustment and shall prescribe therein the time within which a return thereto must be made...." Iowa Code § 335.19.

Iowa Code section 335.21 provides:

If upon the hearing which shall be tried de novo it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence ... which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review.

Iowa Code § 335.21.

■ Section 335.21 tracks verbatim the language of Iowa Code section 414.18, which pertains to municipal zoning. This court has given the same interpretation to both sections. *See Trailer City, Inc. v. Bd. of Adjustment,* 218 N.W.2d 645, 647

(Iowa 1974). In *Trailer*, this court said what "de novo" means under both sections:

The term "de novo" as used in either section [sections 414.18 and 335.21] does not bear its equitable connotation. It authorizes the taking of additional testimony, but only for the submission and consideration of those questions of illegality raised by the statutory petition for writ of certiorari. Upon the hearing to determine such questions the trial court, as both sections 414.18 and [335.21] provide, " . . . may reverse or affirm, wholly or partly, or may modify the decision brought up for review."

*Id.* at 647–48.

■ The questions of illegality for which additional testimony may be taken include

"[a]rbitrary and unreasonable action or proceedings, not authorized by, or contrary to, the terms or spirit and purpose of the statute creating and defining the powers of the board, or contrary to, or unsupported by, facts on which the power to act depends, or within which the power must be exercised. . . ."

*Baker v. Bd. of Adjustment*, 671 N.W.2d 405, 413 (Iowa 2003) (citation omitted).

■ Under both section 414.18 and section 335.21, the district court makes its own findings of fact on the record made in the certiorari proceeding. *Lauridsen v. City of Okoboji Bd. of Adjustment*, 554 N.W.2d 541, 543 (Iowa 1996). That record includes the return to the writ and any additional evidence which the parties may have offered. *Id.* But the district court may not decide the case anew. *Id.* If the facts the district court finds do not provide substantial support for the board's decision, then the illegality of the board's action is established. *Id.* If the facts the district court finds leave the reasonableness of the board's decision open to a fair difference of opinion, the court may not substitute its decision for that of the board. *Id.*

■ Our review on appeal of the district court's decision is at law. *Baker*, 671 N.W.2d at 414. We are therefore bound by the district court's findings if supported by substantial evidence. *Id.* But we are not bound by erroneous legal rulings that materially affect the court's decision. *Id.*

## V. The Protective Order.

On February 21, 2002, Martin Marietta's counsel by telephone informed the County's counsel that it intended to take discovery depositions. Apparently, the County's counsel objected indicating the case should be decided on the record. On February 26 Martin Marietta's counsel by letter to the County's counsel confirmed the telephone conversation and again insisted on discovery depositions. This letter prompted the County to file a motion for protective order, which had attached to it the February 26 letter, to prevent the discovery.

According to Martin Marietta, the following background, most of which was set out in Martin Marietta's resistance to the motion for protective order, prompted its request for discovery depositions. The Board of Supervisors had always supported Hallett's permit application, which the Board of Adjustment had approved on a five to zero vote just one week before the same Board denied Martin Marietta's request. The Board of Supervisors vigorously opposed Martin Marietta's permit application as witnessed by the Board's chairman, Marvin Shirley, who had made many statements in opposition to the Martin Marietta's permit application before the Board of Adjustment's decision to deny the application.

Murray McConnell, Director of Planning and Development in Dallas County, had always voiced support for Martin Marietta's permit application. Suddenly, at the

October 24 hearing, McConnell did an about face when a member of the Board of Adjustment asked him for an opinion as to the five conditions necessary to approve the permit application and whether or not they had been met. Excerpts from McConnell's response follow:

So you can see that these are the five conditions that we've been hitting on all night long. It's true that it would be my interpretation of the ordinance that [the permit application] needs to meet all five in order for you to grant a conditional use [permit] on this property.

. . . .

If you want my professional opinion, the one condition I feel the least comfortable with would have to be condition (a). I believe that it is extremely difficult to quantify the effect of a second operation on property values in the area, and one of the reasons that's so difficult to quantify is that this deals with perception. How is the area perceived? You know, will adding a second sand and gravel operation make this area perceived differently than it is now or has been in the past?

Like I said that's the one I feel probably the least comfortable with. . . . Because if there are any nuisance factors that are created, obviously having a second one in close proximity could increase those.

Because of that, if I was asked to make some sort of recommendation, I feel that my problem with condition (a) puts me close to a comfort zone that I don't feel at this time that I can give a recommendation that you approve this. . . . .

Significantly, there was no discussion or deliberation before the Board of Adjustment voted four to one to deny Martin Marietta's permit application. And more important, the Board's decision to deny the application was based in part on condition (a) not being met and the adverse cumulative effect that would result from having two gravel pits side by side.

Later, Martin Marietta learned that McConnell had allegedly been threatened with the loss of his job if he did not recommend against Martin Marietta's permit application and that this had been the reason for his statements at the October 24 hearing. The record is not clear when Martin Marietta learned that McConnell had allegedly made this statement. The first indication in the record of the alleged statement is attorney Hefner's affidavit filed on July 2, 2002, about one month before the district court heard the certiorari action. In his affidavit, Hefner stated that shortly after the October 24 Board of Adjustment meeting McConnell admitted that the opinion he gave to the Board of Adjustment was the product of a threat that he would be fired. Specifically, McConnell allegedly said to Hefner: "I hope you understand why I made the recommendation I did. If I had not made the recommendation, it would have cost me my job." McConnell filed an affidavit one week after Hefner's affidavit in which he denied making the statements Hefner claimed he made.

What Martin Marietta wanted to do was to take the depositions of McConnell, the members of the Board of Supervisors, and the members of the Board of Adjustment. The purpose of the depositions was to determine whether undue influence had been exercised on the Board of Adjustment and McConnell by members of the Board of Supervisors that resulted in the Board of Adjustment's decision on October 24.

Martin Marietta also wanted to depose the attorney initially hired by the Board of Supervisors to assist the Board in pending litigation and whom the Board of Supervi-

sors had assigned to handle the hearing before the Board of Adjustment on Martin Marietta's application. According to Martin Marietta, it was concerned that the Board of Supervisors may have used the attorney who was acting in a dual capacity to communicate their opposition to Martin Marietta's permit application.

In its petition, Martin Marietta alleged that the Board of Adjustment acted illegally by making a decision based on undue and improper influence. In support of that allegation, Martin Marietta believed that the proposed discovery depositions would establish its claim that the Board of Adjustment decision was "orchestrated by the Board of Supervisors for political reasons." Given these allegations, we believe the discovery that Martin Marietta was seeking was certainly relevant to these allegations.

■ Although the district court denied Martin Marietta's request for discovery and granted the County's motion for protective order, the court in an order clarifying its ruling left the door open. The court first acknowledged the general rule that officials of an administrative agency cannot be compelled to testify, whether by deposition or in trial, concerning the procedure or manner in which they made their findings or reached their conclusions. However, the court also acknowledged a recognized exception: Such compulsory testimony is permitted when there is a clear showing of illegal or unlawful action.

Because of the exception, the court modified its previous ruling to permit Martin Marietta to submit written interrogatories to McConnell. The court then stated it would reconsider its existing protective order if McConnell's answers "give rise to a clear showing of illegal or unlawful conduct." Until then, the court made it clear that

the protective order is applicable to members of the Board of Adjustment and the Board of Supervisors and their counsel as to deposition or testimony at the time of trial. It is equally applicable to any deposition or testimony of Mr. McConnell at the time of trial.

For whatever reason, Martin Marietta did not submit interrogatories to McConnell as the district court had permitted. It now contends the district court abused its discretion forbidding discovery depositions. For reasons that follow, we agree.

■ Our review of a district court ruling granting a protective order is for abuse of discretion. *Tratchel v. Essex Group, Inc.*, 452 N.W.2d 171, 181 (Iowa 1990). "Discretion is abused when it is exercised on grounds clearly untenable or to an extent clearly unreasonable." *Berg v. Des Moines Gen. Hosp. Co.*, 456 N.W.2d 173, 177 (Iowa 1990).

■ Boards of zoning adjustment are "'quasi-judicial bodies having quasi-judicial powers, functions, and duties, essentially fact-finding and discretionary in nature.'" *Bluffs Dev. Co. v. Bd. of Adjustment*, 499 N.W.2d 12, 14 (Iowa 1993) (citation omitted). When such bodies pass on the issuance of a permit, like the one here, they act in a quasi-judicial capacity. *See id.* In such circumstances, board members are

"disqualified or incompetent to sit in a proceeding in which [they have] prejudged the case, or in which [they have] a personal or pecuniary interest, where [they are] related to an interested person ..., or where [they are] biased, prejudiced, or labor[] under a personal ill-will toward a party."

*Id.* at 14–15 (citation omitted) (brackets in original). "Deviation from the rule can

invalidate the governmental action taken." *Id.* at 15.

■ As one court has noted,

[n]o authority would appear to be necessary to support the conclusion that in the performance of [a zoning board of adjustment] adjudicatory function, the parties whose rights are involved are entitled to the same fairness, impartiality and independence of judgment as are expected in a court of law. Although procedures and rules of evidence are less rigid in quasi-judicial bodies than in courts, there can be no difference, under our concept of justice, between the two tribunals in respect of these fundamental requirements.

*Jarrott v. Scrivener*, 225 F.Supp. 827, 833 (D.D.C.1964).

■ Here, what Martin Marietta wanted to get at was whether any of the Board of Adjustment members were unduly and improperly influenced to the extent that such members were biased against granting the use permit. There is a "presumption of regularity that attaches to the decisions of administrative agencies" that protects them against inquiry into how they reach their decisions based upon mere suspicion. *Wright v. Indus. Comm'n*, 10 Wis.2d 653, 103 N.W.2d 531, 535 (1960). However, that presumption may be overcome by a "strong showing of bad faith or improper behavior" that will allow such an inquiry. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136, 155–56 (1971); *accord Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997); *Town of Norfolk v. United States Army Corps of Eng'rs*, 968 F.2d 1438, 1458–59 (1st Cir.1992); *Brands v. Sheldon Cmty. Sch.*, 671 F.Supp. 627, 634 (N.D.Iowa 1987); *Abbott Labs. v. Harris*, 481 F.Supp. 74, 78 (N.D.Ill.1979); *Kholeif*

*v. Bd. of Med. Exam'rs*, 497 N.W.2d 804, 806–07 (Iowa 1993).

The problem here was that Martin Marietta did not make a proper showing of bad faith or improper behavior on the part of Board of Adjustment members to overcome the presumption of regularity. *Cf. Kholeif*, 497 N.W.2d at 807 (holding that under Iowa Administrative Procedure Act party must point to objective facts by affidavit sufficient to convince reasonable fact finder that agency bias existed before record on review will be expanded to include agency's closed-session deliberations). We therefore can hardly say the district court abused its discretion in denying Martin Marietta the right to inquire into the mental processes of the Board of Adjustment members in how they reached their decision.

Although Martin Marietta could not inquire into such mental processes, there is no rule that would prohibit it from asking all of those it wanted to depose whether there was communication with the Board of Adjustment members and what that communication was. *Cf. Bluffs Dev.*, 499 N.W.2d at 16–17 (claim that members of county zoning board of adjustment had prejudged application for conditional use not supported by questioning of individual members at hearing or by depositions during certiorari proceedings following the hearing). In that way, Martin Marietta would at least have the opportunity to establish preliminarily that Board of Adjustment members were indeed subject to improper influence that might have led to its decision. Such a showing would be more than a mere suspicion and would in our judgment overcome the presumption of regularity.

Unless such discovery is allowed, how else could Martin Marietta make such a preliminary showing? *See Pub. Power Council v. Johnson*, 674 F.2d 791, 792, 795

(9th Cir.1982) (deposition of decision maker permitted on allegation of bad faith). And as one court has held, "[t]o conclude otherwise would be an abandonment of any meaningful judicial protection against arbitrary administrative action." *Abbott Labs.*, 481 F.Supp. at 78 (deposition of decision maker permitted on a showing of unreasonable delay in agency's decision); *see also Sokaogon Chippewa Cmty. v. Babbitt*, 961 F.Supp. 1276, 1281 (W.D.Wis. 1997) (plaintiffs made sufficiently "strong showing" of improper influence by way of political pressure and other means on agency decision-makers to be entitled to extra-record discovery and examination of agency personnel); *Jarrott*, 225 F.Supp. at 831 (district court held hearing at which Board of Zoning Adjustment members were required to testify as to political pressure put on them to allow foreign government's application for exception to erect embassy building in residential zone).

In *Abbott Laboratories*, the court aptly recognized that

> [t]he complex of factors which lead a court to conclude that discovery is warranted cannot be generalized. It is necessarily an ad hoc judgment in which the judicial reluctance to intrude into the decisional process of the agency having special competence is overborne by the conclusion that the process may well have gone awry.

481 F.Supp. at 78.

For these reasons, we think the district court abused its discretion when it prohibited any discovery save the interrogatories to McConnell. If Martin Marietta does make the preliminary showing of improper behavior or bad faith, then it would indeed have the right to inquire into the mental processes of the Board of Adjustment members.

## VI. Testimony of Grant and Hefner.

As mentioned, the Board of Adjustment had to find five conditions existed before it could issue the conditional use permit. As also mentioned, at the Board of Adjustment hearing, one of its members asked McConnell, Director of Planning and Development, his opinion as to whether the five conditions had been met. Contrary to his previous statements of support for Martin Marietta's permit application, McConnell did not feel he could recommend approval. His opinion was based on a feeling that condition (a) may not have been met and because of the adverse cumulative effect resulting from two sand and gravel pits existing side by side.

Condition (a) states:

> The value and qualities of the area (or neighborhood) surrounding the conditional use are not substantially injured, and the establishment of a conditional use will not impede the normal and orderly development and improvement of surrounding undeveloped property for uses predominant in the area.

*Dallas County, Iowa, Ordinances* § 45.09(3)(C)(a).

The Board of Adjustment found, among other things, that condition (a) had not been met. It also found that

> the cumulative environmental impact of two such large mining uses on adjacent sites would result in substantial injury to the values and qualities of the area surrounding the two operations, would significantly impede the normal development of surrounding undeveloped property for uses predominant in the area, would result in significantly greater levels of vehicular traffic, odor, fumes, dust, noise, and vibration than would be generated by a single mining operation, alone and would adversely impact public health, safety and general welfare.

The district court found there was substantial evidence to support both findings. It is safe to assume McConnell's opinion played a role in the Board of Adjustment's decision as well as the district court's decision.

We review these facts as background for the remaining issue.

■ As mentioned, Hefner filed an affidavit shortly before the certiorari trial about McConnell's alleged statement that the opinion he gave at the Board of Adjustment meeting was the product of a threat that he would be fired had he not recommended against Martin Marietta's permit application. At the start of the certiorari trial, the district court sustained the County's motion in limine as to Hefner's testimony. Martin Marietta then made an offer of proof with Hefner about the threat. Hefner also testified in the offer of proof that because the Board of Adjustment had asked McConnell for his opinion, that opinion was critical to the Board's decision.

Hefner further testified in the offer of proof that McConnell told him that one of the intervenors was pressuring Shirley, the Chairman of the Board of Supervisors, to bring pressure on McConnell to oppose Martin Marietta's application. In fact, in one e-mail, McConnell simply stated "the political pressure continues to mount." Hefner also testified that Shirley said publicly one month before the Board of Adjustment hearing that he was opposed to the Martin Marietta application.

Martin Marietta also made an offer of proof with Neil Grant. Grant was a Martin Marietta employee and had held the position of West Des Moines city planner. Grant testified in the offer of proof that McConnell had made public statements that the best use of the Pearson property was for sand and gravel operations, but for political reasons, that would never happen.

The court sustained a relevancy objection to this testimony because the statement was made *after* the Board of Adjustment had made its decision.

The testimony of both witnesses supported Martin Marietta's claim that the Board of Adjustment decision was the product of bad faith or improper conduct. If McConnell's true opinion was what Hefner and Grant claimed and had McConnell rendered that opinion to the Board of Adjustment, its decision may well have been different. Moreover, the testimony, if believed, would support a finding that the proceedings before the Board of Adjustment and its decision were so tainted that the decision could not stand. *See United States Cellular Corp. v. Bd. of Adjustment,* 589 N.W.2d 712, 719 (Iowa 1999) (affirming district court's finding that Board of Adjustment denial of applicant's request for special use permit was made in bad faith); *see also Jarrott,* 225 F.Supp. at 833–34 (holding that fair and impartial hearing was denied where three Board of Zoning Adjustment members of District of Columbia, two of whom were subordinate government employees, were secretly informed that highly placed persons in government wanted Board to grant foreign government's application for exception to erect embassy building in residential zone; such action rendered Board's favorable decision void). For these reasons, we conclude the district court abused its discretion in not allowing the testimony of both witnesses. *See Mercer v. Pittway Corp.,* 616 N.W.2d 602, 612 (Iowa 2000) ("We review a district court's decision concerning the admission of relevant evidence for an abuse of discretion.").

## VII. Disposition.

Because we conclude the district court abused its discretion ·in not allowing dis-

covery depositions and excluding the testimony of the two witnesses, Grant and Hefner, we reverse the decision of the district court and remand for further proceedings.

On remand the district court shall allow discovery depositions of all the individuals Martin Marietta designated in its request to the County. The questioning shall be limited to whether there was communication with the Board of Adjustment members and what that communication was. If the district court determines that Martin Marietta has made a showing that such communications were improper or made in bad faith, it may allow Martin Marietta to inquire into the mental processes of the Board of Adjustment members in reaching their decision. Once such discovery is completed, the court shall allow Martin Marietta a new trial at which the court will receive and consider the testimony of Grant and Hefner as well as additional relevant evidence obtained during discovery in reaching its decision.

**REVERSED AND CASE REMANDED WITH DIRECTIONS.**