# IN THE COURT OF APPEALS OF IOWA

No. 17-1665
Filed September 12, 2018

**STEVE GUSTAFSON and JANELLE GUSTAFSON,**
    Plaintiff-Appellants,

**vs.**

**THE BOARD OF ADJUSTMENT OF BUENA VISTA COUNTY, IOWA and MARK SNYDER,**
    Defendant-Appellees.
_____

        Appeal from the Iowa District Court for Buena Vista County, Don E. Courtney, Judge.


        Property owners appeal the denial of a writ of certiorari of the decision by the county board of adjustment approving a building permit on a nonconforming lot. **AFFIRMED.**


        Gina C. Badding of Neu, Minnich, Comito, Halbur, Neu & Badding, PC, Carroll, for appellant.

        Nicholas J. Brown of Nick Brown, PC, Storm Lake, for appellee Mark Snyder.

        David W. Patton, Buena Vista County Attorney, for appellee Board of Adjustment of Buena Vista County.


        Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Steve and Janelle Gustafson appeal the decision of the Board of Adjustment of Buena Vista County (the Board) to grant a zoning certificate for the construction of a single-family residence on a nonconforming lot and the district court's subsequent dismissal of their petition for writ of certiorari. The Gustafsons claim the district court erred in relying on the Board's decision and in its interpretation of the ordinance, and they claim the lot did not pre-exist the ordinance.

## I.    Background Facts and Proceedings

In late November 2015, Mark Snyder purchased a cabin in an unincorporated area of Storm Lake. Buena Vista County has zoned the area as an R-2 residential area. Single-family residential structures are permitted in this R-2 District under Section 6.101 of the zoning ordinance. In March 2016, Snyder and his neighbors each obtained quiet title to a strip of land from the north line of their properties to the water front.

The cabin and its lot predated applicable zoning ordinances regarding lot sizes and did not meet current zoning requirements for the area.[1] In June 2016, Snyder demolished the cabin intending to move a new dwelling into its place.[2] Between May and October, Snyder submitted and withdrew several applications to the Board for permits and variances, as he worked with the zoning administrator

---

[1]  The combined land area of Snyder's property was 4600 square feet with a lot width of forty feet. The zoning ordinance for the district requires lots be 8500 square feet with a lot width minimum of seventy feet.
[2]  The demolition was completed under a May 2016 permit.

and the Board to plan a building complying with setback and side yard requirements.

On November 16, 2016, Snyder filed an application for a zoning compliance permit with the Board to build a single-family residence on his nonconforming lot meeting all side yard, setback, and other zoning requirements. The zoning administrator granted the application the same day and issued a zoning compliance permit to Snyder. The Gustafsons, whose home abuts the lot, filed a notice of appeal with the Board. The permit was stayed, and a hearing was held before the Board on December 13. The Gustafsons advanced two legal theories why the permit should not have been granted: (1) under the ordinance no structure can be built on nonconforming lots, and (2) the lot proposed in the permit did not pre-exist the ordinance. After hearing arguments and public comments, questioning the zoning administrator, county attorney, and Snyder, and reviewing the documents provided, the Board deliberated and unanimously upheld the zoning administrator's decision to grant the permit. The meeting and the decision were recorded, and minutes from the meeting were kept and approved.

On January 13, 2017, the Gustafsons filed a petition for writ of certiorari in the district court against the Board and Snyder alleging the Board acted illegally and arbitrarily in affirming the zoning administrator's decision. The parties agreed to submit the case on the facts in the record, including a transcript of the proceedings and facts from the Board's hearing. The parties submitted additional stipulated facts, exhibits, and written arguments. On September 27, the district court dismissed the petition for writ of certiorari and upheld the Board's decision. The Gustafsons appeal.

## II.     Standard of Review

"Our review of the denial of the petition for writ of certiorari is at law." *Frank Hardie Advert., Inc. v. City of Dubuque Zoning Bd. of Adjustment*, 501 N.W.2d 521, 523 (Iowa 1993).  The district court has the authority to review de novo a petition for certiorari directed to a county board of adjustment under Iowa Code sections 335.19 and 335.21 (2017).[3]  The Gustafsons had the burden to prove the Board's decision was illegal in whole or in part.  Iowa Code § 335.18.  "We review the record to determine whether the trial court applied the correct legal standards and whether its decision is supported by substantial evidence."  *City of Des Moines v. Bd. of Adjustment*, 448 N.W.2d 696, 698 (Iowa Ct. App. 1989).  "Evidence is substantial 'when a reasonable mind could accept it as adequate to reach the same findings.'"  *City of Cedar Rapids v. Mun. Fire & Police Ret. Sys.*, 526 N.W.2d 284, 287 (Iowa 1995) (citation omitted).

## III.     Analysis

The Gustafsons make several claims on appeal.  First, they claim the district court incorrectly applied the proper rule of law by deferring to the Board's interpretation of the county ordinances and challenge the Board's failure to issue a written decision.  Second, the Gustafsons claim the ordinance does not permit a new structure to be built on a nonconforming lot after an existing structure is

---

[3]  The district court discussed the standard of review under chapter 414 of the Iowa Code, which covers city zoning, not county zoning as governed by chapter 335.  While this is a technical error of law, it does not materially affect the court's decision, as we give the same interpretation to mirroring sections from chapters 414 and 335.  *See Martin Marietta Materials, Inc. v. Dallas County*, 675 N.W.2d 544, 550–51 (Iowa 2004) (interpreting sections 335.21 and 414.18 together).

demolished.  Finally, they argue Snyder's lot at the time of application for the permit was not a single lot of record when the ordinance was adopted.

###    A.    Deferral to Board's interpretation of law

The Gustafsons claim the district court incorrectly deferred to the Board's interpretation of the ordinance.  They are correct that statutory construction and questions of law are to be determined by the judiciary.  However, the district court did not simply defer to the Board in accepting its interpretation of the ordinance.

The district court examined two possible interpretations of the county zoning ordinances.  The Gustafsons' interpretation would forbid construction on any pre-existing lot that was not vacant or under construction at the time the ordinance was enacted, severely restricting the rights of property owners.  The Board's interpretation, which followed the advice provided by the county attorney, allows property owners greater use of their property without infringing on the rights of other property owners.

As the district court noted, Iowa courts strictly construe restrictions on the free use of property, resolving any ambiguity in favor of unrestricted use of the property.  *Maher v. Park Homes, Inc.*, 142 N.W.2d 430, 434 (Iowa 1966); *see also Johnson v. Bd. of Adjustment*, 239 N.W.2d 873, 881 (Iowa 1976); *Steinlage v. City of New Hampton*, 567 N.W.2d 438, 442 (Iowa Ct. App. 1997).  "A zoning ordinance should not be extended by implication to prevent a use not clearly prohibited." *Arkae Dev., Inc. v. Zoning Bd. of Adjustment*, 337 N.W.2d 884, 886 (Iowa Ct. App. 1983).  We find no indication the district court followed the Board's interpretation without performing its own analysis.  The district court followed case law by choosing the less restrictive construction of the ordinance.

The Gustafsons claim the Board did not issue a written decision following the administrative appeal, constituting an abuse of discretion requiring reversal of the Board's decision. However, "[o]fficial minutes can, of course, be used to memorialize a decision" of the board of adjustment. *Burroughs v. City of Davenport Zoning Bd. of Adjustment*, 912 N.W.2d 473, 483 (Iowa 2018). Minutes were submitted in this case along with a supplemental audio recording of the meeting, providing us a record to review on appeal.[4]

According to the minutes and recording, facts regarding the lot's zoning, size, and current status were presented by the Gustafsons and agreed to by the zoning administrator and Snyder. The minutes and recording describe the Gustafsons' legal theory for their preferred interpretation of the ordinance and their admission no Iowa precedent backed that interpretation. Their interpretation differed from the county attorney's opinion letter the administrator relied on in issuing the permit, which had also been provided to the Board.[5] The Gustafsons then presented their theory the lot in the permit did not pre-exist the ordinance as required. The Board requested and received a legal interpretation on the pre-existing lot size from the county attorney. Following other public comments and a closed session as well as consideration of the county attorney's opinion letter, the Board voted the zoning administrator "followed the code in determining her decision on granting the permit."

---

[4] While in this case the minutes and audio recording proved sufficient, clearly expressed findings of fact and law will generally be necessary for proper review. *See Bontrager Auto Serv., Inc. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483, 491–92 (Iowa 2008).

[5] The letter examined the ordinance and expressly found the nonconforming lot provision to prevail over the general intent language and the ordinance allowed building on a substandard lot. The letter noted similar ordinance interpretations in counties facing similar development questions.

For the certiorari action, the parties submitted to the district court a stipulation of facts, the minutes from the meeting, the audio recording of the Board's public hearing, the materials provided to the Board, and written briefs. Among the exhibits presented was the July 26, 2016 opinion letter issued by the Buena Vista County Attorney to the zoning administrator on the interpretation of the zoning ordinances the Board had before it during the meeting. Together, the stipulation, minutes, recording, documents provided to the Board, and interpretations from the county attorney provided sufficient record for the district court to review both the factual and legal basis of the decision.

**B.     Ordinance construction**

This case turns on interpretation of the Buena Vista County nonconforming lots ordinance. The language at issue provides:

> Nonconforming Lots: In any district in which single-family dwellings are permitted, notwithstanding limitations imposed by other provisions of this Ordinance, a single-family dwelling and customary accessory buildings may be erected on any single lot of record at the effective date of adoption or amendment of this Ordinance. This provision shall apply even though such lot fails to meet the requirements involving area or width, or both, of the lot; [ . . . ] shall conform to the regulations for the district in which such lot is located.

Buena Vista Cty. Code of Ordinances § 6.1.9.105(2) (2003) (omission in original).

The Gustafsons claim the above provision is modified by the Intent subsection of the ordinance to limit construction on nonconforming lots only to instances where either construction began prior to the adoption of the ordinance or the nonconforming lot was vacant at the time of the adoption. *See id.* § 6.1.9.105(1) (expressing the intent to permit nonconfoming lots, structures, and uses to continue until removed but not encourage their survival and that

nonconforming uses should not be extended, enlarged, or used as grounds to add otherwise prohibited structures). They also cite the nonconforming structures ordinance, though no evidence presented shows the proposed structure itself would be nonconforming, rather, the permit process had been protracted due to the need for Snyder to apply for a permit for a conforming structure, which would be located on the nonconforming lot. *See id.* § 6.1.9.105(4). Finally, the Gustafsons cite as controlling a conflicts ordinance requiring a more restrictive ordinance should prevail over a less restrictive ordinance. *Id.* § 6.1.1.104(A). However, the zoning ordinances also include specific procedures for special exceptions and variances from the ordinances—procedures that would be unnecessary if the most restrictive ordinance must always prevail. *See id.* § 6.1.10.101–.102.

Addressing the Gustafsons' claim of the intent provision modifying the nonconforming lots provision, we turn to our standard tools of statutory interpretation. Iowa courts follow the principle of statutory construction when specific and general statutes conflict or are ambiguous, the specific statute controls. *Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 194 (Iowa 2011). "Legislative intent is shown by what an ordinance says, rather than what it should or might have said." *Baker v. Bd. of Adjustment*, 671 N.W.2d 405, 416 (Iowa 2003). The court's interpretation may not enlarge, change, or read something into a law not apparent from the words chosen by the governing body. *See State v. Childs*, 898 N.W.2d 177, 184 (Iowa 2017).

We agree with the Board's interpretation of the ordinance. The ordinance expressly provides "a single-family dwelling and customary accessory buildings

may be erected on any single lot of record at the effective date of adoption or amendment of this Ordinance." Buena Vista Cty. Code of Ordinances § 6.1.9.105(2). In particular, the phrase "notwithstanding limitations imposed by other provisions of this Ordinance" precludes the Gustafsons' "ordinances as a whole" argument. *See id.* The language is a clear and concise indication from the legislating body that the specific rule controls over the general and permits a new dwelling to be erected despite the lot's nonconformance. We find nothing in the ordinances to suggest the county intended to divest lawful owners of a pre-existing lot of the right to erect a dwelling complying with all other ordinance requirements. The nonconforming lots ordinance does not exempt any dwelling or accessory building from conforming to other residential district ordinance requirements, including uses, height, setbacks, or side yards; nor does it permit the creation of additional nonconforming lots. The Board's decision to uphold the zoning permit complies with the county ordinances.

### C. Lot size

As to the Gustafsons' final claim, the county attorney confirmed to the Board at the hearing that the lakefront land subject to the quiet title action had never been platted separately or dedicated to the public and so was part of the lots. The court in the quiet title action expressly found the property owners had proven by clear and convincing evidence they owned the property in fee simple on the strength of their title and the State, county, and township had no rights in the property. The quiet title action did not create a new nonconforming lot, and Snyder's lot falls within section 6.1.9.105(2).

Finding no error below, we affirm the district court's dismissal of the petition for writ of certiorari.

**AFFIRMED.**