LINWOOD V. BAKER AND WIFE, MAMIE D. BAKER, WILLIE RHODES, AND WIFE, AUDREY RHODES, MABLE L. ALLEN, THURMAN ALLEN AND WIFE, MARY ALLEN, JERRY ALLEN AND WIFE, BRENDA ALLEN, WILLIAMS H. ALLEN AND WIFE, PAMELA ALLEN, GERTRUDE WILLIAMS, LEVY WILLIAMS, WILLIE GLASPIE AND WIFE, TREVA GLASPIE, RICHARD McKINNIE AND WIFE, RUTH McKINNIE, RONALD McKINNIE, VERNON MITCHELL AND WIFE, KATHERINE MITCHELL, WILLIAM ELDERMAN, OSCAR MURPHY, AND WIFE, MARY MURPHY, AND WILLIE P. WILLIAMS, PETITIONERS v. TOWN OF ROSE HILL AND THE TOWN OF ROSE HILL BOARD OF COMMISSIONERS, RESPONDENTS

No. COA96-647

(Filed 20 May 1997)

## 1. Zoning § 61 (NCI4th)— conditional use permit—findings supported by evidence

In an action in which petitioners challenged defendant town's issuance of a conditional use permit for the construction of a soybean meal transfer facility, the evidence supported findings by the town's board of commissioners that the applicant had met requirements of the town's zoning ordinance for a conditional use permit, including findings that the use will not impair the integrity or character of the surrounding or adjoining districts and that the requested use is desirable to the public convenience or welfare.

**Am Jur 2d, Zoning and Planning § 218.**

## 2. Zoning § 61 (NCI4th)— conditional use permit—change in town board's membership between hearings

It was not error for the trial court to conclude that defendant town's board of commissioners properly considered the evidence presented at an initial hearing for the issuance of a conditional use permit despite the fact that one member of the board had changed between the initial and final hearing where petitioners failed to show that they were prejudiced by the change because four of five board members voted in favor of issuing the permit.

**Am Jur 2d, Zoning and Planning § 218.**

Appeal by petitioners from orders entered 20 January 1996 and 4 March 1996 by Judge Russell J. Lanier, Jr. in Duplin County Superior Court. Heard in the Court of Appeals 19 February 1997.

BAKER v. TOWN OF ROSE HILL

[126 N.C. App. 338 (1997)]

*Shipman & Associates, L.L.P., by Gary K. Shipman and C. Wes Hodges, II, for petitioners-appellants.*

*Burrows & Hall, by Richard L. Burrows, for respondent-appellee.*

WALKER, Judge.

On 31 July 1995, Cargill, Inc. requested a conditional use permit (CUP) from the Town of Rose Hill (the Town) for the construction of a soybean meal transfer facility. The property upon which the facility would be located was within a district zoned mixed-use. The mixed-use district allows industrial uses upon complying with the conditions listed in the Town's zoning ordinance and obtaining a CUP.

A hearing was held before the Planning Board on 11 September 1995, at which time they received evidence in support of the application for a CUP and in opposition to its issuance. A majority of the Planning Board voted to recommend to the Town of Rose Hill Board of Commissioners (the Town Board) that it deny the issuance of a CUP to Cargill.

On 12 September 1995, the Town Board held a public hearing wherein the petitioners voiced their opposition to the proposed transfer facility. Cargill responded with its reasons why the CUP should be granted. Later, the Town Board adopted a resolution finding that Cargill had "met the conditions applicable to such a conditional use permit as are presently required to be met . . ." and then issued a CUP to Cargill on 6 October 1995. The CUP was conditioned upon Cargill's compliance with thirteen detailed requirements.

Section 12.3 of Rose Hill's zoning ordinance provides in part:

In granting a Conditional Use Permit, the Board, with due regard to the nature and state of all adjacent structures and uses, the district within which same is located, shall make written findings that the following are fulfilled:

A. The use requested is listed among the conditional uses in the district for which application is made; or is similar in character to those listed in that District.

B. The requested use will not impair the integrity or character of the surrounding or adjoining districts, nor adversely affect the safety, health, morals, or welfare of the community or the immediate neighbors of the property;

BAKER v. TOWN OF ROSE HILL

[126 N.C. App. 338 (1997)]

C. The requested use is essential or desirable to the public convenience or welfare;

D. The requested use will be in conformity with the Land Use Plan;

E. Adequate utilities, access roads, drainage, sanitation and/or other necessary facilities have been or are being provided;

F. That adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets;

G. That the conditional use shall, in all other respects, conform to the applicable regulations of the district in which it is located.

In adopting its resolution, the Town Board made written findings pursuant to Section 12.3 (A),(D),(E),(F) and (G). However, it did not make written findings with regard to Section 12.3 (B) and (C), upon the advice of the Town Board's attorney that these subsections were subjective in nature and not appropriate to consider in the conditional use decision making process.

The petitioners filed a writ of certiorari seeking judicial review of the proceedings. After a hearing was held in superior court an order was entered 23 January 1996, remanding the matter back to the Town Board to consider and make findings with regard to Section 12.3 (B) and (C) of the zoning ordinance. The order further directed that such findings should be based on evidence in the record before the trial court. All other claims of petitioners were dismissed and the court retained jurisdiction over the case for further orders.

On 6 February 1996, the Town Board again considered the matter and adopted a resolution finding that Cargill had met the requirements of Section 12.3 (B) and (C). The Town Board's minutes and the resolution were provided to the trial court which then issued a supplemental order dismissing the additional claims of petitioners and declaring the CUP to be valid.

[1] The petitioners argue that the trial court erred in concluding that the Town Board's findings were supported by competent, material and substantive evidence and that the findings of the Town Board were not arbitrary or capricious. We disagree.

This Court's review is limited to determining the following:

(1) Whether the Board of Commissioners committed any errors in law;

(2) Whether the Board of Commissioners followed the procedures specified by law in applicable statutes and ordinances;

(3) Whether the petitioners were afforded due process rights, including the right to offer evidence, cross-examine all witnesses and inspect relevant documents;

(4) Whether the decision of the Board of Commissioners was supported by competent, material and substantial evidence in the whole record, and;

(5) Whether the Board's decision was arbitrary and capricious.

*Concrete Co. v. Board of Commissioners,* 299 N.C. 620, 626, 265 S.E.2d 379, 383, *rehearing denied,* 300 N.C. 562, 270 S.E.2d 106 (1980).

In the instant case, we must determine whether the findings made by the Board with respect to Section 12.3 (B) and (C) were supported by competent, material and substantial evidence in the whole record. Substantial evidence is defined as "that which a reasonable mind would regard as sufficiently supporting a specific result." *CG & T Corp. v. Bd. of Adjustment of Wilmington,* 105 N.C. App. 32, 40, 411 S.E.2d 655, 660 (1992).

With respect to Section 12.3 (B), the Board made the following findings:

a) The nature or character of a substantial portion of the extraterritorial district in which Cargill seeks a conditional use permit to construct and operate a soybean meal transfer station presently contains uses which are either industrial or commercial in nature. The particular area in which Cargill seeks to conduct its business is substantially more industrial than residential in that it is located between two large feed mills owned and operated by Murphy Farms, Inc., and is immediately adjacent to a main line railroad track, which is principally used for the hauling of commercial and agricultural freight. The corridor along and adjacent to the railroad track is essentially commercial in nature, and has been used for such purposes for a period in excess of 25 years.

b) The construction and operation of Cargill's soybean transfer station will decrease the truck traffic in the immediate area and surrounding districts in that the intended purpose of using rail

traffic is to avoid using more expensive truck traffic. Presently all transportation of the soybean meal is by truck traffic. The use of rail transportation will thereby decrease the safety risks accompanying truck traffic.

The record contains the following evidence from the public hearing on 12 September 1995 and supports the findings of the Town Board: The Wells Road Community consisted of forty modest homes but the nearest house to this facility was approximately 1500 feet away; the nearest house to the railroad spur was approximately 600 to 800 feet away; Cargill would be "located so as to service both of the Murphy Farm feedmills...;" truck traffic would be decreased; dust would not present a problem; and the use of the railroad cars instead of trucks would decrease the safety risk to pedestrians; also, Cargill employees would be operating the facility. Further, the site plan submitted by Cargill shows the facility would be located immediately adjacent to the railroad and between the two feed mills. We conclude that the Town Board's findings with respect to Section 12.3 (B) are supported by competent, material and substantial evidence.

The Board, with respect to Section 12.3 (C), made the following findings:

a) The construction of the soybean meal transfer facility will decrease the truck traffic in the area, thereby decreasing the safety risks posed by such traffic; and,

b) The freight cost for transporting soybean meal by rail is less than the costs of truck transportation, thereby benefitting the public by decreased costs and benefitting the local economy.

c) The area in which the soybean meal will be transported will be along the rail road right-of-way directly to the transfer station, thereby decreasing the exposure of spillage or leakage along such public highways and the residential areas, which are adjacent to such public highways.

An examination of the record provides the following evidence in support of these findings: Truck traffic would be decreased which in turn would decrease noise and dust, and the use of rail transportation would thereby decrease the safety risks accompanying truck traffic. Further, railroad cars would be used instead of trucks to haul the product to both Murphy Farms feed mills and trucks would be used only in emergency situations. The procedure used to unload the prod-

**BAKER v. TOWN OF ROSE HILL**

[126 N.C. App. 338 (1997)]

uct from the railroad cars would utilize an enclosed conveyor belt system thereby further decreasing the dust. The facility would only operate during daylight hours. As such, we conclude the Board's findings with respect to Section 12.3 (C) were also supported by competent, material and substantial evidence.

We hold that the trial court properly concluded that the evidence in the record supported the Town Board's finding that Section 12.3 (B) and (C) had been met and that the conditional use permit should have been issued to Cargill, Inc.

[2] The petitioners next assert that the trial court erred in concluding that the Town Board sitting on 6 February 1996 could properly consider the evidence presented to the Town Board at its hearing on 12 September 1995 and that no additional hearings were required as a result of the newly constituted Town Board.

The only change in the Board's makeup was the addition of Ben L. Harrell who had been a member of the Planning Board on 11 September 1995. Prior to the February meeting, Harrell was provided with a copy of the entire record being considered by the trial court. Petitioners contend that Harrell should be disqualified from voting upon the issue without a new hearing because he was "unable to consider unique questions broached at the Board of Commissioner's meeting or to contemplate the issue raised as a Commissioner, not as a member of the Planning Board." Petitioners failed to show how they were prejudiced as four of five members of the Town Board voted in favor of the resolution to issue the CUP. The trial court properly dismissed the petitioners' claims and its orders of 20 January 1996 and 4 March 1996 are

Affirmed.

Judges GREENE and McGEE concur.