**BUTLER v. CITY COUNCIL OF CLINTON**

[160 N.C. App. 68 (2003)]

TIMMY R. BUTLER AND FRANCIS D. BUTLER, PETITIONERS v. CITY COUNCIL OF THE
CITY OF CLINTON AND THE CITY OF CLINTON, RESPONDENTS

No. COA02-1268

(Filed 19 August 2003)

### Cities and Towns— crematory—conditional use permit denied

A city's decision to deny a conditional use permit for a cre-
matory was supported by competent, material, and substantial
evidence, and the trial court correctly affirmed the city's decision,
where the applicable ordinance required that the proposed use
"will not" be detrimental to the safety or general welfare, while
petitioners' evidence was that the crematory would "likely" not
be a danger.

Appeal by petitioners from order entered 19 June 2002 by Judge
Russell J. Lanier, Jr., in Sampson County Superior Court. Heard in the
Court of Appeals 4 June 2003.

*The Banks Law Firm, P.A., by John Roseboro, and The
Charleston Group, by Jonathan Charleston, for petitioner
appellants.*

*Johnson, Parsons, and Hobson, P.A., by Dale Johnson, for
respondent appellees.*

TIMMONS-GOODSON, Judge.

Tim and Francis Butler ("petitioners") appeal from an order of the
trial court affirming a denial by the City Council of the City of Clinton
("respondents") of petitioners' application for a conditional use per-
mit ("CUP") to operate a crematory in Clinton, North Carolina.

The facts pertinent to the instant appeal are as follows: On 8
January 2002, the City Council conducted a hearing on petitioners'
application. After reviewing the evidence, respondents determined
that petitioners failed to present uncontroverted evidence that the
proposed crematory would comply with all of the standards of the
applicable zoning ordinance ("the ordinance"), and unanimously
voted to deny the CUP.

Petitioners thereafter filed an ex parte petition for writ of certio-
rari to the Sampson County Superior Court seeking judicial review of
respondents' denial of the CUP application. On 19 June 2002, the trial

**BUTLER v. CITY COUNCIL OF CLINTON**

[160 N.C. App. 68 (2003)]

court entered an order containing the following pertinent findings of fact:

1. THIS MATTER arises out of a conditional use permit request by the Petitioners to operate a crematorium on the corner of North Boulevard and Lloyd Street in an office and institutional district in Clinton, North Carolina. This matter was heard by the City of Clinton Planning and Zoning Board on December 17, 2001. The City of Clinton Planning and Zoning Board unanimously denied the conditional use request upon the grounds that the Petitioners failed to prove Standards 1, 2 and 4 of the Standards of the Clinton Zoning Ordinance, Section 10.7, as set out in the record.

2. That all eight standards must be approved in order to justify a conditional use permit. That Section 10.1.8 of the Clinton Zoning Ordinance indicates that the City must consider each case and its impact on those uses upon neighboring land and of the public need for the particular use and particular location.

. . . .

6. That the City Council of the City of Clinton found and submitted the following certified findings of fact:

(a) That the proposed site was within one mile radius of two residential neighborhoods, six medical facilities, one elementary school, three day cares, one restaurant and grocery stores.

(b) That the crematorium site has residences, across the street in front of the site, and to the side of the site, all within one hundred yards. There are eight houses directly facing the property.

(c) That there are scientific, environmental and health concerns about the identification and qualification of emissions from crematoriums, as to heavy metals, such as mercury and dioxins. The crematoriums are listed as the third biggest source of dioxins. That children are of particular risk to dioxins. That Sampson Regional Medical Center in Clinton, NC, closed its human tissue incinerator because of scientific and environmental concerns. (Dr. Paul Viser, Board Certified in Internal Medicine)

(d) That by the nature of the crematorium, which incinerates human bodies, there are legitimate concerns about the psychological impact of such, in an area with residences nearby, on children and residents of that area.

(e) That a crematorium would substantially decrease and impair the value of residences and properties, in the area, due to the adverse psychological impact in the unresolved, unanswered health and safety issues.

(f) That a thirty-six-inch diameter, seventeen foot, eight inches high emissions stack would be inconsistent with architectural appeal of the existing office and institutional adjacent property, and the character of the applicable district.

(g) That there is a lack of necessity of a crematorium at this site, with residences close by, when there are other alternative sites available.

(h) That the new regulations for solid waste incinerators, which include crematoriums, will not be issued by the Environmental Protection Agency until November 15, 2005.

(i) That there is currently litigation concerning issues involving the current regulations on crematorium incinerators.

Based on these findings, the trial court concluded that respondents had acted lawfully and that its decision was supported by competent, material, and substantial evidence. The trial court therefore affirmed respondents' denial of the CUP. From this order of the trial court, petitioners appeal.

---

Petitioners argue that the trial court erred in affirming respondents' decision to deny the issuance of a CUP because the decision was unsupported by competent, material, and substantial evidence, based on the whole record. For the reasons herein, we affirm the order of the trial court.

"A legislative body such as [a city council], when granting or denying a conditional use permit, sits as a quasi-judicial body . . ." *Sun Suites Holdings, LLC v. Board of Alderman of Town of Garner*, 139 N.C. App. 269, 271, 533 S.E.2d 525, 527 (2000). As such, denial of a CUP is subject to review in the nature of certiorari by the superior court. *See* N.C. Gen. Stat. § 160A-381(c) (2001). The trial court's review is limited to determining whether the conduct of the city council was in accordance with the law and whether the decision was supported by competent, material, and substantial evidence based on the "whole record." *See Pisgah Oil Co. v. Western N.C. Reg'l Air Pollution Control Agency*, 139 N.C. App 402, 405, 533 S.E.2d 290, 293 (2000); *Baker v. Town of Rose Hill*, 126 N.C. App. 338, 341, 485 S.E.2d

**BUTLER v. CITY COUNCIL OF CLINTON**

[160 N.C. App. 68 (2003)]

78, 80 (1997). Our task on review of the trial court's order is " 'twofold: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " *Pisgah* at 405, 533 S.E.2d at 293 (quoting *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994)). In the case at bar, petitioners do not contend that the trial court applied an improper standard of review. Thus, this Court must determine whether the trial court properly applied the "whole record" test to the instant facts.

Section 10.7 of the ordinance sets out eight standards that must be satisfied before a CUP may be issued. Failure to meet any one standard is grounds for denial of the entire application. Respondents determined that petitioners failed to present substantial evidence to support CUP standards one, two, and four under the applicable ordinance.[1] Standards one, two, and four of the ordinance, read as follows:

(1) That the establishment, maintenance, or operation of the conditional use will not be detrimental to or endanger the public health, safety, morals, or general welfare.

(2) That the conditional use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already.

. . . .

(4) That the exterior architectural appeal and functional plan of any proposed structures will not be so at variance with either the exterior architectural appeal and functional plan of the structures already constructed or in the course of construction in the immediate neighborhood or the character of the applicable district, as

---

1. We note that the language of the ordinance does not specifically permit crematories as a conditional use, but merely "funeral homes." The North Carolina General Statutes define a "funeral establishment" as "every place or premises devoted to or used in the care, arrangement and preparation for the funeral and final disposition of dead bodies and maintained for the convenience of the public in connection with dead bodies or as the place for carrying on the profession of funeral service." N.C. Gen. Stat. § 90-210.20(h) (2001). "Crematory" is defined as "the building or portion of a building that houses the cremation center and that may house the holding facility, business office or other part of the crematory business." N.C. Gen. Stat. § 90-210.41(9) (2001). Further, funeral establishments and crematories have separate licensing boards. *See* N.C. Gen. Stat. §§ 90-210.18, 90-210.42 (2001). As the question of whether the ordinance permits crematories in the town of Clinton is not directly before us, we decline to address this issue.

to cause a substantial depreciation in the property values within the neighborhood.

Petitioners contend that they presented competent, material, and substantial evidence in compliance with these standards.

In support of the first standard, petitioners produced evidence of emission testing and equipment documentation to demonstrate that the proposed crematory *"likely* would not" jeopardize or endanger the public health, safety, morals, or general welfare. The language of standard one of the ordinance, however, specifically requires evidence that the proposed use " . . . *will not* be detrimental to or endanger the . . . general welfare." Further, respondents heard evidence presented in support of the denial that tended to show that the proposed crematory could endanger general welfare. Residents testified about concerns with potential learning disabilities and cancer caused by emissions from the burning of human bodies, as well as the potentially adverse psychological effect on children living in the neighborhood. Dr. Paul Viser, a general internist, testified concerning mercury emissions from crematories that adversely affect the kidneys and the central nervous system, as well as dioxins that harm both reproductive and immune systems.

In a case similar to the instant case, *Mann Media v. Randolph County Planning Bd.*, 356 N.C. 1, 565 S.E.2d 9 (2002), the petitioner appealed from the denial of an application for a special use permit to build a broadcast tower zoned for residential and agricultural use. After an application hearing, the Randolph County planning board denied the request for the permit based on findings indicating that the potential of ice forming and falling from support wires of the proposed towers was a public safety risk. Upon petition, the superior court reversed the denial of the special use permit. On appeal, the North Carolina Court of Appeals affirmed the trial court. Respondents sought further review. The North Carolina Supreme Court reversed the decision of this Court, holding that

> Under the whole record test, in light of petitioners' inability satisfactorily to prove that the proposed use would not materially endanger public safety, we are not permitted to substitute our judgment for that of respondent. Accordingly, we hold that petitioners failed to meet their burden of proving this first requirement and did not establish a *prima facie* case.

*Id.* at 17, 565 S.E.2d at 19.

Similarly, the present petitioners failed to produce *uncontroverted* evidence to ensure that the proposed use *will not* be detrimental to the safety or general welfare of the residents. They also failed to overcome evidence of the adverse psychological impact on the ability of the residents to use and enjoy their property. We conclude that the trial court did not err in affirming respondents' denial of the permit based on petitioners' failure to show that the proposed crematory would comply with standard one of the ordinance. Because petitioners failed to prove one of the eight standards, it is unnecessary for this Court to address the remaining two standards in order to reach our decision.

In conclusion, we uphold the trial court's order affirming the decision by the City of Clinton and City Council to deny the CUP. The trial court appropriately applied the proper standard of review, and its decision is supported by competent, material, and substantial evidence. We therefore affirm the order of the trial court.

Affirmed.

Judges HUDSON and STEELMAN concur.