# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES A. KAY, JR., individually
and d/b/a LUCKY'S TWO WAY
RADIO; COMMUNICATIONS RELAY
CORPORATION, a California
corporation,
             *Plaintiffs-Appellants,*

                 v.

CITY OF RANCHO PALOS VERDES, a
municipality; RANCHO PALOS
VERDES PLANNING COMMISSION, and
its members; FRANK LYON; LARRY
CLARK; JON CARTWRIGHT; THOMAS
LONG; CRAIG MUELLER; THEODORE
PAULSON; DONALD VANNORSDALL;
CITY OF RANCHO PALOS VERDES
CITY COUNCIL, and its members;
JOHN MCTAGGART; DOUGLAS STERN;
PETER GARDINER; BARBARA
FERRARO,
             *Defendants-Appellees.*

No. 05-56149

D.C. No.
CV-02-03922-DSF

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
May 7, 2007—Pasadena, California

Filed September 21, 2007

Before: Barry G. Silverman, Kim McLane Wardlaw, and
Jay S. Bybee, Circuit Judges.

12901

Opinion by Judge Wardlaw

**COUNSEL**

C. D. Michel, Glenn S. McRoberts, and Thomas E. Macie-
jewski of Trutanich Michel LLP, Long Beach, California, for
the plaintiffs-appellants.

Carol W. Lynch, City Attorney, Rancho Palos Verdes, Cali-
fornia, for the defendants-appellees.

T. Peter Pierce and David G. Alderson of Richards, Watson
& Gerson, Los Angeles, California, for the defendants-
appellees.

## OPINION

WARDLAW, Circuit Judge:

James A. Kay, Jr. wanted to use the pre-existing amateur antennae on the roof of a house in the City of Rancho Palos Verdes ("the City") for commercial wireless transmissions. The City denied him a conditional use permit ("CUP"), and Kay filed suit. The district court dismissed three of his claims, but ruled in his favor on his Telecommunications Act ("TCA") and California state law claims. Although the district court granted injunctive relief, it found that the City enjoys immunity from damages, and denied Kay's request for compensatory damages. Kay appeals the dismissal of three of his claims, the denial of damages, and seeks reassignment to a different judge on remand. We have jurisdiction pursuant to 28 U.S.C. § 1291. We hold that the dismissed claims are now barred by the doctrine of res judicata, and that the City is immune from damages under controlling California law. Finally, we hold that compensatory damages are not available under the TCA, 47 U.S.C. § 332,[1] and affirm the district court.

## I.   BACKGROUND

Kay is an FCC-licensed amateur and commercial broadcaster who operates commercial two-way radio systems. Kay operates transmission facilities throughout Southern California. In 1994 he purchased a single-family residence located in Rancho Palos Verdes, California. The house had two pre-existing vertical radio antennae mounted on the roof.[2] It has remained unoccupied since 1994. In January 1997, the City sent Kay a notice of violation claiming that he was using his

---

[1]Section 332(c)(7) was added to the Telecommunications Act of 1934 by § 704 of the Telecommunications Act of 1996. To avoid confusion, we use the shorthand "TCA" to refer to the 1934 Act as amended by the 1996 Act. We do not use the section numbering from the 1996 Act.

[2]The antennae can be used both for amateur and commercial purposes.

rooftop antennae for commercial purposes. Kay denied using the rooftop antennae commercially. But, in April 1998, he installed antennae for commercial use inside an upstairs bedroom of the house. Then, at some point, Kay installed three more vertical antennae on the roof. On August 5, 1998, Kay filed an application with the City seeking approval for non-commercial use of the antennae on the roof. On July 7, 1999, the City notified Kay that his five antennae were exempt from regulation because they were intended for amateur use.

On April 14, 2000, the City filed suit against Kay in state court, seeking an injunction compelling him to obey the City's municipal code and requiring him to obtain approval from the City before using any of his antennae for commercial purposes. On February 25, 2002, the state court entered a permanent injunction in favor of the City. It held that the interior antennae operated on commercial frequencies and "that the use of any antenna for commercial purposes without having first obtained City approval, including but not limited to a conditional use permit, was a public nuisance per se." The state court enjoined Kay from erecting any new antennae or using his existing antennae for commercial purposes without City approval. This decision was affirmed by the California Court of Appeal in an unpublished opinion on December 30, 2003.

On June 21, 2001, Kay applied to the City for a conditional use permit to allow commercial use of the existing five antennae. In an October 23, 2001 report, City planning staff recommended a conditional grant of his application. At a City Planning Commission meeting on the same day, the commissioners determined that Kay had lied about his past commercial use of the antennae, but took no further action on the application. In a November 13, 2001 report, City planning staff again recommended granting Kay's application. The report also noted that after the application was filed, more antennae were added to the roof of the house. A draft resolution granting Kay's application for only the five antennae was

proposed. On November 15, 2001, the City Planning Com-
mission issued a resolution denying commercial use of the
rooftop antennae, requiring removal of three of the five anten-
nae, and allowing commercial use of only the internal anten-
nae.

Kay appealed to the City Council. Before his appeal could
be heard, a district court decision on another challenge to the
City's commercial broadcast policies caused the City to
amend its antenna regulations.[3] On March 19, 2002, City
planning staff again recommended that all five antennae be
approved for commercial use. Finally, on April 16, 2002, the
City Council approved a resolution granting Kay the right to
commercially broadcast from only two of the rooftop anten-
nae. This approval was conditioned on, inter alia, Kay's
removal of the other three antennae.

Kay filed suit in the United States District Court for the
Central District of California seeking an order that would
vacate the City's conditional use permit decision and compel
it to allow him to broadcast commercially from all five anten-
nae. He invoked both the TCA and California state law. He
also asserted a number of other claims in the complaint, three
of which were dismissed by the district court. Kay sought
remedies including an injunction, a writ of mandate, damages
resulting from the partial denial of the conditional use permit,
and attorney's fees under 42 U.S.C. § 1988(b). The district
court analyzed the City's CUP decision and determined that
it was not supported by substantial evidence as required by
the TCA, 47 U.S.C. § 332(c)(7)(B)(iii), and California law. It
issued a writ of mandate requiring that the City permit com-
mercial use of all five of Kay's antennae. The district court

---

[3]That case eventually led to the Supreme Court's first decision related
to the enforcement of and remedies under § 332. *See Abrams v. City of
Rancho Palos Verdes*, No. 00-9071SVW (RNBX), 2002 WL 34100670
(C.D. Cal. Mar. 18, 2002), *rev'd*, 354 F.3d 1094 (9th Cir. 2004), *rev'd*,
544 U.S. 113 (2005).

denied damages under both California and federal law. Kay appeals the dismissal of three claims, the denial of damages under the TCA and state law, and asks that a new judge be assigned on remand.

## II.  DISCUSSION

### 1.  Dismissed Claims

Kay argues that the district court erred by dismissing three of his claims without prejudice, rather than staying them under *Younger v. Harris*, 401 U.S. 37 (1971).[4] "Abstention by a district court is required under *Younger* when three criteria are satisfied: (1) State judicial proceedings are ongoing; (2) The proceedings implicate important state interests; and (3) The state proceedings provide an adequate opportunity to raise federal questions." *Commc'ns Telesys. Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1015 (9th Cir. 1999). The parties do not dispute the district court's determination that *Younger* applies to Kay's claims. Nor do they disagree that "[w]hen damages are at issue, and comity dictates, courts should defer" by staying, rather than dismissing, under *Younger. Gilbertson v. Albright*, 381 F.3d 965, 982 (9th Cir. 2004) (en banc). We agree that the district court should have stayed the claims, but conclude that the dismissed claims are now barred as a result of the state proceedings that precipitated the district court's abstention.

[1] "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Thus, to determine the preclusive effect

---

[4]The three claims are: (1) that the conditional use permit procedures violate the First Amendment; (2) for violation of California constitutional guarantees of free expression, due process, and equal protection; and (3) that the City's antenna regulations violate the First Amendment.

of the California state court decision, we apply California law. "The application of claim preclusion in California focuses on three questions: (1) was the previous adjudication on the merits, (2) was it final, and (3) does the current dispute involve the same 'claim' or 'cause of action'?" *Robi v. Five Platters, Inc.*, 838 F.2d 318, 324 (9th Cir. 1988) (citing *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (1975)).

**[2]** In *City of Rancho Palos Verdes v. Kay*, No. B157393, 2003 WL 23025571 (Cal. Ct. App. Dec. 30, 2003), the California Court of Appeal squarely addressed the merits of the three claims dismissed by the district court.[5] It held that neither the City's conditional use permit rules nor its antenna ordinance runs afoul of the First Amendment or of the California Constitution. *Id.* at *7-*8. The decision is also final. "Unlike the federal rule and that of several states, in California the rule is that the finality required to invoke the preclusive bar of res judicata is not achieved until an appeal from the trial court judgment has been exhausted or the time to appeal has expired." *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th 1168, 1174 (Ct. App. 2000) (citation omitted). The California Court of Appeal issued the remittitur in Kay's case on March 4, 2004. The issuance of the remittitur indicates that the appellate process, including a potential petition for review to the California Supreme Court has been exhausted—and thus that the decision has become final. *See Rare Coin Galleries, Inc. v. A-Mark Coin Co.*, 202 Cal. App. 3d 330, 335-36 (Ct. App. 1988) (discussing remittitur in the context of tolling the statute of limitations).

The first two requirements for claim preclusion are clearly satisfied, leaving the third and final question: whether the state case involved the same claim or cause of action. In this vein, "California has consistently applied the 'primary rights'

---

[5]Although the Court of Appeal's decision is unpublished, it may be cited and relied on for claim preclusion purposes. Cal. R. Ct. 8.1115(b)(1).

theory, under which the invasion of one primary right gives rise to a single cause of action. As we recently observed, California's 'primary rights' theory does not mean that different causes of action are involved just because relief may be obtained under . . . either of two legal theories." *Robi*, 838 F.2d at 324 (citations and quotation omitted). "*Res judicata* [claim preclusion] prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Id.* (quoting *State Bd. of Equalization v. Superior Court*, 39 Cal. 3d 633, 641 (1985)) (emphasis and alteration in original).

[3] The primary right at issue here is Kay's right to be free of unconstitutional restrictions imposed on his free speech by the City through its regulation of antennae and the conditional use permit process. In rejecting Kay's claims, the California Court of Appeal addressed various theories by which the City might be liable for violation of Kay's First Amendment and California Constitutional rights. Kay alleged violations of those same rights in his federal complaint, thus implicating the same primary right. To the extent that the dismissed causes of action here could be creatively construed to be different from those that were addressed in Kay's state action, the claims could and should have been raised by Kay in that action. Thus, we hold that Kay is now barred from asserting his three dismissed claims before the federal courts.

## 2.    Damages under California Law

[4] Kay submits that the district court erred by holding that he was not entitled to compensatory damages under California law. The district court granted Kay only injunctive relief in the form of a peremptory mandate commanding the City to "adopt a new resolution allowing Kay to use his five mast antenna structure for commercial purposes, subject to reasonable conditions." Writs of mandate are used under California law "for the purpose of inquiring into the validity of any final

administrative order. . .” CAL. CODE CIV. PROC. § 1094.5(a). Here, the district court reviewed the final administrative order in response to Kay’s conditional use permit application, and “enter[ed] judgment . . . commanding [the City] to set aside the order or decision.” *Id.* § 1094.5(f). Under a companion provision of California law, “[i]f judgment be given for the applicant, the applicant *may recover the damages which the applicant has sustained* . . . and a peremptory mandate must also be awarded without delay.” *Id.* section 1095 (emphasis added).

**[5]** The availability of damages under section 1095, however, is limited by California Government Code sections 818.4 and 821.2. *State v. Superior Court*, 12 Cal. 3d 237, 246 (1974). Section 818.4 provides that “[a] public entity is not liable for an injury caused by the . . . denial . . . of . . . any permit . . . or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended, or revoked.” Section 821.2 is a corollary that immunizes public employees for their roles in the discretionary permit decisions governed by section 818.4. “The immunity applies only to discretionary activities.” *Richards v. Dep’t of Alcoholic Beverages Control*, 139 Cal. App. 4th 304, 318 (Ct. App. 2006). The decision whether to issue a conditional use permit is “discretionary by definition.” *Breakzone Billiards v. City of Torrance*, 81 Cal. App. 4th 1205, 1224 (Ct. App. 2000) (citation omitted).

Kay claims that because he sought only to change the frequency from amateur to commercial use on the antennae, the City had no discretion to deny the CUP.[6] This assertion is premised on the TCA’s preclusion of municipalities from “regulat[ing] the placement, construction, and modification of

---

[6]Although the City eventually granted the CUP as to two of the antennae, we construe the City’s decision as a denial of the permit as to the three other antennae.

personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv). Because the City had already approved his antennae for noncommercial use, and the switch to commercial use entailed only a change in radio frequency, Kay argues the City lacked discretion because it could not consistently with the TCA ever deny the CUP even in part.

Kay's argument is largely based on *Thompson v. City of Lake Elsinore*, 18 Cal. App. 4th 49 (Ct. App. 1993). There, the plaintiff renovated a building in compliance "with all the appropriate building codes, regulations and requirements," and received a "Final Inspection Okay." *Id*. at 53. Lake Elsinore nevertheless withheld the issuance of a certificate of occupancy for the building, allegedly in an attempt to cause the plaintiff to comply with city demands related to other properties he owned. *Id.* The *Thompson* court explained that because Lake Elsinore had already exercised its discretion during the building permit process, it had no discretion to refuse to perform the purely ministerial duty of issuing the occupancy permit. *Id*. at 58.

*Thompson* is inapposite. There, Lake Elsinore had already found that the building at issue complied with all regulations, and was thus *required by law* to issue a certificate of occupancy. *Id.* at 56 (citing Uniform Building Code § 307). For that reason, the city lacked discretion to deny the certificate, and damages were available. Here, the City was considering an application for a permit to use a home in a residential neighborhood to engage in commercial operations. As the contentious transcripts from the City hearings demonstrate, decisions like this are freighted with concerns from neighbors and City officials intent on maintaining the residential character of the neighborhood. *See Breakzone Billiards*, 81 Cal. App. 4th at 1224 ("In considering applications for such permits, a city is obligated to examine permit applications on an

individual basis, applying sound principles of planning and zoning administration in a fair manner."). The conditions attached to the City's partial approval of the CUP reflect these sound principles. For example, the City imposed limits on the times for maintenance work, number of vehicles present at the property, noise levels, and yard maintenance.

Kay also relies on *City of Rancho Palos Verdes v. Abrams*, 101 Cal. App. 4th 367 (Ct. App. 2002), to support his argument that the City was compelled to grant him a CUP. There, the Court of Appeal struck down an injunction against Abrams using a previously-approved amateur antenna for commercial purposes. The Court of Appeal reasoned that "the only change in Abrams's operation would be the commercial use of frequencies allocated and assigned by the FCC. Because the trial court's injunction prohibits that use, it is preempted by [the TCA]." *Id.* at 375. While we agree with the California Court of Appeal that regulation based solely on the transmission frequency is verboten, we do not read that preemption as giving amateur broadcasters immunity from local permit requirements if they decide to switch to commercial broadcasting on existing antennae. As discussed in *Breakzone Billiards* and reflected in the use permit conditions above, there are numerous legitimate local concerns implicated by a commercial operation that do not attach to amateur use, and which have nothing to do with "the environmental effects of radio frequency emissions." 47 U.S.C. § 332(c)(7)(B)(iv). There are situations in which a municipality may deny, for reasons related to the impact of a commercial operation on the neighborhood, a permit for an amateur broadcaster to operate commercially. *Cf. Tenn. ex rel. Wireless Income Props., LLC v. City of Chattanooga*, 403 F.3d 392, 398 (6th Cir. 2005) ("The TCA does not preempt all authority of state or local governments over the regulation of wireless towers."); *Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 19 (1st Cir. 2002) ("The [TCA] attempts, subject to five limitations, to preserve state and local authority over the placement and construction of facilities.").

**[6]** While the record suggests that the denial of Kay's permit may have been driven at least in part by animus on the part of City officials, the record also shows that the City was exercising its discretion as part of its planning and administrative duties. For that reason, we hold that the City's decision to deny Kay's CUP was discretionary, and that his remedies under California law are limited to the peremptory writ already granted by the district court.

## 3.    Damages under the Telecommunications Act

Nor did the district court err by holding that Kay was not entitled to compensatory damages under the TCA. Congress explicitly created, and Kay sued under, a private right of action in the TCA:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

47 U.S.C. § 332(c)(7)(B)(v). The district court held in Kay's favor on his TCA claim, but did not explicitly grant him a remedy under the TCA.[7] Section 332 of the TCA does not

---

[7]Both Kay's TCA and California law claims involve an identical substantial evidence review of the City's decision. *See MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 723 (9th Cir. 2005); *Topanga Ass'n for a Scenic Cmty. v. County of Los Angeles*, 11 Cal.3d 506, 514-15 (1974). The district court found for Kay on both causes of action, but the sole remedy granted was the state law remedy of a peremptory writ of mandate under California Code of Civil Procedure section 1095.

specify the remedies available to successful litigants, and no circuit court of appeals has squarely addressed the availability of compensatory damages as a remedy. The Supreme Court, however, has provided some guidance, both in the context of attempted use of the Civil Rights Act of 1871, 42 U.S.C. § 1983 to enforce § 332 of the TCA, and more generally in the context of statutes that are silent on available remedies.

## A. Section 1983

**[7]** The Supreme Court recently held that "the TCA — by providing a judicial remedy different from § 1983 in § 332(c)(7) itself — precluded resort to § 1983," to enforce violations of § 332. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 127 (2005). The Court of Appeals' decision had reached the opposite conclusion, holding that money damages and attorney's fees were available for TCA violations enforced through a § 1983 action. *Id.* at 119 (discussing *Abrams v. City of Rancho Palos Verdes*, 354 F.3d 1094 (9th Cir. 2004)). Writing for the Court, Justice Scalia briefly noted portions of § 332 that create a thirty-day window for appeals and the requirement of expedited judicial review as examples that the "TCA . . . adds no remedies to those available under § 1983, and limits relief in ways that § 1983 does not." *Id.* at 122. "The remedies available [under § 332], moreover, perhaps do not include compensatory damages (the lower courts are seemingly in disagreement on this point), and certainly do not include attorney's fees and costs." *Id.* at 122-23 (footnotes omitted).[8] The Court noted that "[l]iability for attorney's fees would have a particularly severe impact in the § 332(c)(7)

---

[8]The Court cited *PrimeCo Personal Communications, Ltd. v. City of Mequon*, 352 F.3d 1147 (7th Cir. 2003), for the proposition that some courts have held that damages were available. However, *PrimeCo* merely recognized, as the Supreme Court later did in *Abrams*, that the TCA created an enforcement mechanism in § 332 and that 42 U.S.C. § 1983 was not a proper enforcement vehicle. *PrimeCo*, 352 F.3d at 1152-53. At most, *PrimeCo* assumed without deciding that damages would be available in a direct § 332 cause of action. *Id.*

context, making local governments liable for the (often substantial) legal expenses of large commercial interests for the misapplication of a complex and novel statutory scheme." *Id.* at 123 (citing *Nextel Partners Inc. v. Kingston Township*, 286 F.3d 687, 695 (3d Cir. 2002) ("TCA plaintiffs are often large corporations or affiliated entities, whereas TCA defendants are often small, rural municipalities."). Justice Breyer, joined by Justices O'Connor, Souter, and Ginsburg concurred, and pointed out that the quasi-administrative nature of review under § 332 meant that "to permit § 1983 actions . . . would undermine the compromise — between purely federal and purely local . . . policies — that the statute reflects." *Id.* at 128-29. Finally, Justice Stevens, writing alone, concurred and expressed the view that "there is not a shred of evidence in the legislative history suggesting that . . . Congress intended plaintiffs to be able to recover damages and attorney's fees." *Id.* at 130. Justice Stevens further stressed "the fact that awards of damages and attorney's fees could have potentially disastrous consequences for the likely defendants in most private actions under the TCA." *Id.* at 132.

While the Supreme Court has not ruled on the availability of damages in suits directly under § 332, the concerns expressed in *Abrams* about the structure and nature of the TCA and Congress's intent in passing the law pertain as much to suits directly under § 332 as they do to suits seeking remedies via § 1983. With these concerns in mind, we examine the availability of compensatory damages.

### B.   TCA Remedies

"[I]t is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684 (1946). The Court has subsequently explained that "the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to

a federal statute," *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 71 (1992), and that "denial of a remedy [is] the exception rather than the rule," *id*. At the same time, it is critical that when deciding *which* remedies are appropriate in a given situation, we attempt to "infer how . . . Congress would have addressed the issue" if it had done so at the time the law was passed. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998) (quoting *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 178 (1994)). In *Franklin*, the Court examined a district court's dismissal of a Title IX damages action for failure to state a claim, 503 U.S. at 64, and remanded after holding that a damages remedy was appropriate and consistent with the intent of Title IX, *id.* at 71-76. The Court narrowed this broad rule in *Gebser*, again examining the purpose and intent behind Title IX, and limiting the circumstances under which damages were an appropriate remedy. 524 U.S. at 292-93. To determine whether damages are appropriate here, we examine Congress's intent and the structure of § 332.

### 1. Stated Intent

**[8]** As in *Franklin*, we first examine whether Congress intended to limit the remedies available for violations of § 332. 503 U.S. at 71. We have no statement of congressional intent on the question of remedies in the legislative history. *See Abrams*, 544 U.S. at 130 (Stevens, J., concurring). However, unlike the implied Title IX cause of action in *Franklin* and *Gebser*, here we have some legislative history discussing the remedial structure created by the statute. Section 332(c)(7), captioned "[p]reservation of local zoning authority," was intended to minimize federal interference with State and local land use decisions. *See* H.R. Conf. Rep. No. 104-458, at 207-08 (1996) (hereinafter "Conference Report") ("The conference agreement . . . preserves the authority of State and local governments over zoning and land use matters except in the limited circumstances set forth in the conference agreement.").

**[9]** Because TCA plaintiffs are often large telecommunications companies, it is likely that the damages attributed by them to adverse zoning or permitting decisions will be substantial, particularly from the viewpoint of a municipality. *See Abrams*, 544 U.S. at 123. This potential for large damages claims, even if they are not ultimately awarded, suggests that Congress did not intend to create a damages remedy. Just like the attorney's fees addressed by the Court in *Abrams*, there is a real danger here that a damages remedy "would have a particularly severe impact in the § 332(c)(7) context, making local governments liable for the (often substantial) [damages] of large commercial interests for the misapplication of a complex and novel statutory scheme." *Id.* The specter of large damages claims, and the expensive litigation recognized in *Abrams*, could easily intimidate local authorities into effectively abdicating their zoning and permitting powers when confronted with an application from a wireless service provider.[9]

Nor do we find that the requirement that courts "hear and decide such action on an expedited basis," 47 U.S.C. § 332(c)(7)(B)(v), cuts against this view, as the *Nextel Partners* court mused in passing. 286 F.3d at 695 ("For defendants, assuming for the sake of argument that damages may be recovered under the TCA itself, quick review may diminish the amount that may be recovered.") (footnote omitted). In the Central District of California, where Kay filed his action, the median time from the filing of a complaint to disposition of the case after a trial is 23.9 months. Administrative Office of the United States Courts, Federal Judicial Caseload Statistics tbl. C-5 (March 31, 2006). Partially due to the intervening *Abrams* decision, the City took almost a year to decide Kay's permit application, and the district court took another two years to hold a bench trial and rule on the merits of the permit issue. This kind of schedule for the resolution of a civil case,

---

[9]As discussed in the context of Kay's state damages claim, local zoning and permitting authorities are normally immune from damages under state law.

even on an expedited basis, is typical. It is unrealistic to expect any case involving administrative review to wend its way through our district courts, let alone the appellate process, in a manner that is speedy enough to meaningfully stave off the accumulation of damages.

[10] Congress sought to preserve local authority while also providing a federal forum for the review of certain zoning and permitting decisions without further need to exhaust "any independent State court remedy otherwise required." Conference Report at 209. A damages remedy does not further that purpose, and could potentially frustrate it.

### 2.   Administrative Nature of Review

Several features of section § 332(c)(7) are borrowed from state zoning and administrative review laws. Zoning and permitting decisions are made by municipalities like the City or other regional authorities. Every state provides for review of such agency decisions through an appeal or writ of certiorari to the state courts, and most provide a short time frame in which to file an appeal; thirty-two of those states have a thirty-day appeal period.[10] The TCA adopts a similar thirty-day appeal period. 47 U.S.C. § 332(c)(7)(B)(v). The language used by Congress closely mirrors many of those same state laws, allowing "[a]ny person adversely affected by any final action or failure to act" to seek aid from the courts. *Id*. The TCA also requires that zoning decisions by state and local authorities be "in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Congress explained that it used this phrase to reflect "the traditional standard used for judicial review of agency actions." Conference Report at 208. Most states also apply a similarly deferential standard of review to appeals from local zoning and permitting agency decisions. *See*

---

[10]Thirty days is the mode, but some states give as few as ten days or as many as ninety days to appeal. *See* Appendix A.

Appendix B. Most states also have statutory schemes similar to that in California, which immunize state zoning and permitting agencies from damages when their decisions are overturned on appeal. *See* Appendix C.

Congress's creation of a quasi-administrative review process for zoning and permitting decisions in the TCA that mirrors that of the states suggests that the appropriate remedies under that review process should also mirror those available under state law.[11]

*        *        *

**[11]** The legislative history, structure, and nature of the rights and the review process provided in § 332(c)(7) demonstrate the congressional intent to create a federal administrative review process analogous to state zoning reviews, and not a more general enforcement mechanism. Therefore, we hold that damages are not an appropriate remedy for violations of § 332.[12]

---

[11]The federal Administrative Procedure Act similarly limits the review of federal agency actions to those that do not involve claims of monetary damages. *See* 5 U.S.C. § 702.

[12]This holding is consistent with the holdings of our sister circuits that, even though they do not address the question of damages, recognize the availability of injunctive relief for violations of § 332. *See, e.g.*, *Wireless Income Props.*, 403 F.3d at 399 ("[W]e have repeatedly concluded that where the defendant denied a permit application . . . the proper remedy is injunctive relief compelling the defendant to issue the requested permit."); *Nat'l Tower*, 297 F.3d at 21-22 ("Instead, in the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order . . . instructing the board to authorize construction.") (citations omitted); *Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1222 (11th Cir. 2002) ("We conclude an injunction ordering issuance of a permit is an appropriate remedy for a violation of [the TCA]."); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999) (noting that injunctive relief fits with the TCA's stated goal of expediting the resolution of disputes).

## III.   CONCLUSION

We hold that Kay's three dismissed claims are barred by claim preclusion, that the City is immune from damages under California law, and that § 332 of the TCA does not provide a damages remedy.[13]

**AFFIRMED.**

---

[13]Because we affirm the district court, we do not address Kay's request for assignment to a different judge on remand.

## APPENDIX[14]

### A.

Ala. Code § 11-52-81 (15 days); Alaska Stat. § 29.40.060 (time to appeal set by assembly); Ariz. Rev. Stat. Ann. § 12-904 (35 days); Ark. Code Ann. § 14-56-425 (30 days); Cal. Gov't Code § 65009(c)(1) (90 days); Colo. R. Civ. P. 106(b) (30 days); Conn. Gen. Stat. § 8-8(b) (15 days); Del. Code Ann. tit. 38 § 328(a) (30 days); Fla. Stat. § 120.68 (30 days); Ga. Code § 5-3-20 (30 days); Haw. Rev. Stat. § 91-14 (30 days); Idaho Code Ann. § 65-6519(4) (28 days); 735 Ill. Comp. Stat. 5/3-103 (35 days); Ind. Code § 36-7-4-1003 (30 days); Iowa Code § 335.18 (30 days); Kan. Stat. Ann. § 19-223 (30 days); Ky. Rev. Stat. Ann. § 100.347 (30 days); La. Rev. Stat. Ann. § 33:4727 (30 days); Me. Rev. Stat. Ann. tit. 5 § 11002 (30 days); Md. Cir. Ct. R. 7-203 (30 days); Mass. Gen. Laws ch. 40A, § 17 (20 days); Mich. Comp. Laws § 125.3606 (30 days); Minn. Stat. § 394.27 (30 days); Miss. Code § 11-51-75 (10 days); Mo. Rev. Stat. § 89.110 (30 days); Mont. Code Ann. § 76-2-327 (30 days); Neb. Rev. Stat. § 14-413 (30 days); Nev. Rev. Stat. § 14-413 (25 days); N.H. Rev. Stat. Ann. § 677:4 (30 days); N.J. Ct. R. 4:69-6 (30 days); N.M. Stat. § 39-3-1.1 (30 days); N.Y. Town Law § 267-c (30 days); N.C. Gen. Stat. § 160A-388(e2) (30 days); N.D. Cent. Code § 28-34-01 (30 days); Ohio Rev. Code Ann. § 2505.07 (30 days); Okla. Stat. tit. 11, § 44-110 (time to appeal to be determined by local ordinance); Or. Rev. Stat. § 197.850 (21 days); 53 Pa. Cons. Stat. § 11002-A (30 days); R.I. Gen. Laws § 45-24-69 (20 days); S.C. Code Ann. § 6-29-820 (30 days); S.D. Codified Laws § 11-2-61 (30 days); Tenn. Code Ann. § 27-9-102 (60 days); Tex. Loc. Gov't Code Ann. § 211.011 (10 days); Utah Code Ann. § 10-9a-801 (30 days); Vt. R. Env't Ct. Proc. R. 5 (30 days); Va. Code Ann. § 15.2-2314 (30 days); Wash. Rev. Code § 36.70C.040 (21 days); W.

---

[14]All code sections listed in this appendix are current as of the date of filing of this opinion.

Va. Code § 8A 9-1 (30 days); Wis. Stat. § 59.694 (30 days); Wyo. R. App. P. 12.04 (30 days).

## B.

Ala. Code § 11-52-81 (de novo); *South Anchorage Concerned Coalition, Inc. v. Coffey*, 862 P.2d 168, 173 (Alaska 1993) (substantial evidence); *Murphy v. Town of Chino Valley*, 789 P.2d 1072, 1077 (Ariz. Ct. App.1989) (substantial evidence); Ark. Code Ann. § 14-56-425 (de novo); *Topanga Ass'n for a Scenic Cmty v. County of Los Angeles*, 11 Cal.3d 506, 514-15 (1974) (substantial evidence); Colo. R. Civ. P. 106(b) (abuse of discretion); *Bloom v. Zoning Bd. of Appeals*, 658 A.2d 559, 563 (Conn. 1995) (abuse of discretion); *Searles v. Darling*, 83 A.2d 96, 99 (Del. 1951) (substantial evidence); Fla. Stat. § 120.68 (substantial evidence); *Jackson v. Spalding County*, 265 Ga. 792, 462 S.E.2d 361, 364 (1995) (abuse of discretion); Haw. Rev. Stat. § 91-14 (abuse of discretion); *Sanders Orchard v. Gem County ex rel. Bd. of County Comm'rs*, 52 P.3d 840, 843 (Idaho 2002) (substantial evidence or abuse of discretion); *Menning v. Dep't of Registration & Educ.*, 153 N.E.2d 52, 55 (Ill. 1958) (substantial evidence); *Carlton v. Bd. of Zoning Appeals*, 245 N.E.2d 337, 343-44 (Ind. 1969) (substantial evidence or abuse of discretion); *Martin Marietta Materials, Inc. v. Dallas County*, 675 N.W.2d 544, 551 (Iowa 2004) (substantial evidence); *Combined Inv. Co. v. Bd. of County Comm'rs*, 605 P.2d 533, 543 (Kan. 1980) (substantial evidence); *Am. Beauty Homes Corp. v. Louisville & Jefferson County Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky.1964) (substantial evidence); *Coliseum Square Ass'n, Inc. v. Bd. of Zoning Adjustments*, 374 So.2d 177, 179 (La. Ct. App. 1979) (abuse of discretion); *Lippoth v. Zoning Bd. of Appeals*, 311 A.2d 552, 557 (Me. 1973) (reasonableness); *Stansbury v. Jones*, 812 A.2d 312, 318-19 (Md. 2002) (substantial evidence); *Gulf Oil Corp. v. Bd. of Appeals*, 244 N.E.2d 311, 313 (Mass. 1969) (unreasonable, whimsical, capricious, or arbitrary); Mich. Comp. Laws § 125.3606 (substantial evidence); *Honn v. City of Coon Rapids*, 313 N.W.2d

409, 414 (Minn. 1981) (substantial evidence); *Barnes v. Bd. of Supervisors*, 553 So.2d 508, 511 (Miss. 1989) (substantial evidence); *State ex rel. Teefey v. Bd. of Zoning Adjustment*, 24 S.W.3d 681, 684 (Mo. 2000) (en banc) (substantial evidence); *Sutey Oil Co. v. Anaconda-Deer Lodge County Planning Bd.*, 959 P.2d 496, 499 (Mont. 1998) (abuse of discretion); *Stratbucker Children's Trust v. Zoning Bd. of Appeals*, 497 N.W.2d 671, 674 (Neb. 1993) (arbitrary, unreasonable, or clearly wrong); *Nevada Contractors v. Washoe County*, 792 P.2d 31, 33 (Nev. 1990) (substantial evidence); *Harrington v. Town of Warner*, 872 A.2d 990, 994(N.H. 2005) (reasonableness); *New Brunswick Cellular Tel. Co. v. Township of Edison Zoning Bd. of Adjustment*, 693 A.2d 180, 184 (N.J. Sup. Ct. Law Div. 1997) (substantial evidence); N.M. Stat. § 39-3-1.1 (substantial evidence or arbitrary or capricious); *Doyle v. Amster*, 594 N.E.2d 911, 913 (N.Y. 1992) (substantial evidence); *Butler v. City Council of City of Clinton*, 584 S.E.2d 103, 105 (N.C. App. 2003) (substantial evidence); *City of Fargo v. Ness*, 529 N.W.2d 572, 576 (N.D. 1995) (arbitrary, capricious, or unreasonable); Ohio Rev. Code Ann. § 2506.04 ("arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record"); *Wetherell v. Douglas County*, 146 P.3d 343, 344 (Or. Ct. App. 2006) (substantial evidence); *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639-40 (Pa. 1983) (substantial evidence); *Apostolou v. Genovesi*, 388 A.2d 821, 824 (R.I. 1978) (substantial evidence); *Peterson Outdoor Advert. v. City of Myrtle Beach*, 489 S.E.2d 630, 632-33 (S.C. 1997) (substantial evidence); *Even v. City of Parker*, 597 N.W.2d 670, 673 (S.D. 1999) (substantial evidence); *Estate of Street v. State Bd. of Equalization*, 812 S.W.2d 583, 585-86 (Tenn. Ct. App. 1990) (substantial evidence); *Pearce v. City of Round Rock*, 78 S.W.3d 642, 646 (Tex. App. 2002) (abuse of discretion); *Rogers v. West Valley City*, 142 P.3d 554, 556 (Utah Ct. App. 2006) (substantial evidence); *In re S-S Corporation/Rooney Hous. Devs.*, 896 A.2d 67, 70 (Vt. 2006); *Foster v. Geller*, 449

S.E.2d 802, 804-05 (Va. 1994) (plainly wrong); *Cingular Wireless, LLC v. Thurston County*, 129 P.3d 300, 305-06 (Wash. Ct. App. 2006) (substantial evidence); *Maplewood Estates Homeowners Ass'n v. Putnam County Planning Comm'n*, 629 S.E.2d 778, 782 (W. Va. 2006) (substantial evidence); *Sills v. Walworth County Land Mgmt. Comm.*, 648 N.W.2d 878, 883 (Wis. Ct. App. 2002) (substantial evidence); *Donaghy v. Bd. of Adjustment of City of Green River*, 55 P.3d 707, 710 (Wyo. 2002) (substantial evidence).

C.

Alaska Stat. § 09.65.070; Ark. Code Ann. § 21-9-301 (limiting liability to scope of insurance coverage); Cal. Gov't Code § 818.4; Colo. Rev. Stat. § 24-20-106; Conn. Gen. Stat. § 52-557n; Del. Code Ann. tit. 10 § 4011; *Akin v. City of Miami*, 65 So.2d 54, 55 (Fla. 1953); Ga. Code § 36-33-1; Haw. Rev. Stat. § 662-15; Idaho Code Ann. § 6-904B; 745 Ill. Comp. Stat. 10/2-104; Ind. Code § 34-13-3-3; Kan. Stat. Ann. § 75-6104; Ky. Rev. Stat. Ann. § 65.2003; La. Rev. Stat. Ann. § 9:2798.1; Me. Rev. Stat. Ann. tit. 14 § 8104-B; Mass. Gen. Laws ch. 258, § 10; Mich. Comp. Laws § 691.1407; Minn. Stat. § 466.03; Miss. Code § 11-46-3; Neb. Rev. Stat. § 13-910; Nev. Rev. Stat. § 278.0233 (allowing damages in limited circumstances); N.J. Stat. Ann. § 59:2-5; N.M. Stat. § 41-4-4; *Rottkamp v. Young*, 249 N.Y.S.2d 330 (N.Y. App. Div. 1964), *aff'd*, 205 N.E.2d 866 (N.Y. 1965); N.D. Cent. Code § 32-12.1-03; Okla. Stat. tit. 51, § 155; Or. Rev. Stat. § 30.265; 42 Pa. Cons. Stat. §§ 8541, 8542; R.I. Gen. Laws § 9-31-1 (limiting, but not totally foreclosing damages); S.C. Code. Ann. § 15-78-60; S.D. Codified Laws §§ 21-32A-1, 21-32A-3 (limiting liability to scope of insurance coverage); Tenn. Code Ann. §§ 29-20-201, 29-20-205; Utah Code Ann. § 63-30d-301; Wash. Rev. Code § 64.40.020 (allowing damages in limited circumstances); W. Va. Code § 29-12A-5; Wis. Stat. § 893.80; Wyo. Stat. Ann. § 1-39-104.